[Civ. No. 37638. First Dist., Div. Two. Jan. 30, 1976.]

CHARLES L. THOMAS, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA
COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Sheldon Portman, Public Defender, John L. Williams, Philip H. Pennypacker and Frank D. Berry, Jr., Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Derald E. Granberg and Clifford K. Thompson, Jr., Deputy Attorneys General, for Real Party in Interest.

Victor D. Vertner as Amicus Curiae.

**OPINION**

**TAYLOR, P. J.**—Petitioner, charged with murder (Pen. Code, § 187), robbery (Pen. Code, § 211), and criminal conspiracy (Pen. Code, § 182), alleged to have been committed under circumstances invoking additional penalties (Pen. Code, § 12022.5), and under special circumstances invoking the death penalty (Pen. Code, § 190.2, subds. (a), (b)(3)(i)), seeks mandate to review an order of the respondent superior court which denied petitioner's motion to proceed in propria persona. Petitioner contends that under *Faretta* v. *California* (decided June 30, 1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525], a defendant in a state criminal proceeding has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so.

In *Faretta* v. *California, supra,* the United States Supreme Court found such an implied right in the Sixth Amendment as made applicable to the states by the Fourteenth Amendment and held that by forcing Faretta to accept a state-appointed public defender against his will, the California courts deprived him of his constitutional right to conduct his own defense.[1]

Petitioner argued before the trial court that, like Faretta, he was entitled to conduct his own defense.[2] After extensive argument and the examination of petitioner, the court ruled, as a matter of law, that petitioner could not knowingly and intelligently waive his right to

---

[1] The Sixth Amendment of the United States Constitution provides that an accused in a criminal prosecution "shall enjoy the right . . . to have the Assistance of Counsel for his defence."

[2] Petitioner's original request to proceed in propria persona was made at his preliminary examination on June 2, 1975, before the decision issued in *Faretta*. The decision issued in *Faretta* on June 30, 1975. On August 4, when petitioner renewed his request to proceed in propria persona, and on August 18 and 25, when his motion was argued, *Faretta* was controlling law, and petitioner's motion, filed in advance of trial, was timely.

counsel. It is apparent that the court was of the opinion that a defendant accused of a capital offense has no constitutional right to proceed without counsel.

Although *Faretta* did not involve a prosecution for a capital offense, we are unable to deny its applicability to the present case. Further, we can no longer find support for the trial court's conclusion in existing statutes and case law which require representation in capital cases, since it now appears that, to the extent that they conflict with the principles enunciated in *Faretta,* such statutes and decisions have been superseded by that more recent ruling. In *Faretta,* the United States Supreme Court was aware that the California Court of Appeal had relied upon the recent decision of *People* v. *Sharp* (1972) 7 Cal.3d 448 [103 Cal.Rptr. 233, 499 P.2d 489], when that tribunal affirmed the trial court's ruling that Faretta had no federal or state constitutional right to represent himself; also, that the California Legislature had enacted statutes which required representation by counsel in capital cases (see Pen. Code, §§ 686, subd. 2, 686.1, 859, 987). (*Faretta* v. *California, supra,* at p. 811, fn. 6 [45 L.Ed.2d at p. 568].)[3]

Mindful of its decisions which hold that the Constitution requires that no accused be convicted and imprisoned unless he has been accorded the right to the assistance of counsel (*Powell* v. *Alabama* (1932) 287 U.S. 45 [77 L.Ed. 158, 53 S.Ct. 55, 84 A.L.R. 527]; *Johnson* v. *Zerbst* (1938) 304 U.S. 458 [82 L.Ed. 1461, 58 S.Ct. 1019]; *Gideon* v. *Wainwright* (1963) 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733]; *Argersinger* v. *Hamlin* (1972) 407 U.S. 25 [32 L.Ed.2d 530, 92 S.Ct. 2006]), and acknowledging that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts, the court in *Faretta* nevertheless concluded that "Personal liberties are not rooted in the law of averages. The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal

---

[3]When *Sharp* was tried, the California Constitution provided that an accused in a criminal prosecution had the right "to appear and defend, in person and with counsel." (Cal. Const., art. I, former § 13.) Shortly before *Sharp* was decided on appeal, the California Constitution had been amended to provide the party accused with the right "to have the assistance of counsel for his defense . . . and to be personally present with counsel . . ." and a provision empowering the Legislature "to require the defendant in a felony case to have the assistance of counsel" had been added. (*People* v. *Sharp, supra,* Appendix, p. 463.) The latter provision was deleted in the revision of the California Constitution adopted November 5, 1974. Article I, section 15, of the California Constitution presently provides that "The defendant in a criminal cause has the right . . . to have the assistance of counsel for the defendant's defense, to be personally present with counsel . . . ."

consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of 'that respect for the individual which is the lifeblood of the law.' *Illinois* v. *Allen,* 397 U.S. 337, 350-351 (BRENNAN, J., concurring)." (*Faretta* v. *California, supra,* at p. 834 [45 L.Ed.2d at p. 581].)

� We hold, therefore, that a defendant accused of a capital offense has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so.

The *Faretta* court set forth certain standards to govern the assertion of the right to self-representation: "When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits. *Johnson* v. *Zerbst,* 304 U.S., at 464-465. Cf. *Von Moltke* v. *Gillies,* 332 U.S. 708, 723-724 (plurality opinion of Black, J.). Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' *Adams* v. *United States ex rel. McCann,* 317 U.S., at 279." (*Faretta* v. *California, supra,* at p. 835 [45 L.Ed.2d at pp. 581-582].)[4]

Here, as in *Faretta,* petitioner clearly and unequivocally declared to the trial judge that he was making the express decision to represent himself and that he was making that decision freely and voluntarily. Questioning by the judge revealed that petitioner was 42 years old, had an 11th grade education, was articulate, and that he was aware of the

---

[4]Although only limited reliance may now be placed on pre-*Faretta* cases, these standards are not unlike those set forth in *People* v. *Floyd* (1970) 1 Cal.3d 694, 703 [83 Cal.Rptr. 608, 464 P.2d 64], wherein the court stated that "Although the defendant's right to represent himself cannot be denied simply because he is unable to 'demonstrate either the acumen or the learning of a skilled lawyer' [citations], a defendant may waive counsel and choose to represent himself *only if the defendant has an intelligent conception of the consequences of his act* [citation] *and understands the nature of the offense, the available pleas and defenses, and the possible punishments* [citation]." (Italics added.)

seriousness of the crime and the possible consequences.[5] Although technical legal knowledge, as such, is not relevant to an assessment of a defendant's knowing exercise of his right to defend himself (*Faretta, supra,* at p. 835 [45 L.Ed.2d at pp. 581-582]), petitioner also expressed a knowledge of the hearsay rule and marital privilege. The court warned petitioner that he was charged with a capital offense, that a lawyer who was trained could undoubtedly represent him better, and that petitioner's conduct of his own defense could mean the difference between life or death. The court also warned petitioner that the court was not going to come to his assistance, and further warned him that he would be foreclosed from attacking his own competency on appeal.

The record shows that petitioner was "literate, competent and understanding"; that he was made aware of the dangers and disadvantages of self-representation, and that he voluntarily exercised his informed free will. ■ ■■■■■ In forcing petitioner, under these circumstances, to accept against his will a state-appointed public defender, the trial court deprived him of his constitutional right to conduct his own defense. (*Faretta* v. *California, supra,* at p. 835 [45 L.Ed.2d at pp. 581-582].)[6]

The People advance the contention that in a capital case, when a defendant elects to represent himself, the court should appoint stand-by counsel. The People thus pose another of the unanswered questions raised by *Faretta:* "If a defendant has elected to exercise his right to proceed *pro se,* does he still have a constitutional right to assistance of stand-by counsel?" (Dissent of Justice Blackmun, p. 852 [45 L.Ed.2d at p. 592.].) The majority discussed the matter in a footnote (fn. 46, pp. 834-835 [45 L.Ed.2d 581]): "We are told that many criminal defendants representing themselves may use the courtroom for deliberate disruption of their trials. But the right of self-representation has been recognized from

---

[5]The posture of this case differs from that of a defendant coming before the court for the first time. At the time of the hearing, on petitioner's motion, petitioner had been arraigned twice, presumably receiving advice from the court on his constitutional rights; also, he had been represented by counsel at his preliminary hearing, at his arraignment in the superior court, at the hearing on his motion, and in his petition to this court, presumably receiving advice from counsel as to the nature of the offenses, the available pleas and defenses and the possible punishment.

[6]Codefendant Elliot, as amicus, argues that permitting a codefendant in a multiple defendant case to represent himself will deny the other codefendants their right to due process of law. Codefendant may, upon an adequate showing, move for a severance. Codefendant's remedy does not lie in a denial of his codefendant's constitutional right, nor may the state's interest in a joint trial prevail over petitioner's right of self-representation.

our beginnings by federal law and by most of the States, and no such result has thereby occurred. Moreover, the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct. See *Illinois* v. *Allen,* 397 U.S. 337. Of course, a State may—even over objection by the accused—appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary. See *United States* v. *Dougherty,* 154 U.S.App. D.C. 76, 87-89, 473 F.2d 1113, 1124-1126. [¶] The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law. Thus, whatever else may or may not be open to him on appeal, a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.' "

Under pre-*Faretta* authority, an accused is not entitled to have his case presented in court by both himself and counsel acting at the same time. (*People* v. *Sharp, supra,* at p. 459; *People* v. *Mattson* (1959) 51 Cal.2d 777, 783-788 [336 P.2d 937].) Petitioner contends that the issue of whether stand-by counsel should be appointed is premature for decision by this court, pointing out that his prayer is that the public defender be relieved and that he be permitted to represent himself.

█ A prerogative writ arising from a criminal action is limited to issues involved in the criminal action and has the objective of correcting or preventing error, as the case may be, on the part of the trial court in the underlying action. (*Bravo* v. *Cabell* (1974) 11 Cal.3d 834, 839 [114 Cal.Rptr. 618, 523 P.2d 658].) It is clear that the court, having based its ruling on the erroneous premise that a defendant in a capital case could not waive his right to counsel, did not reach the issue of whether stand-by counsel should be appointed. We agree, therefore, that any ruling by this court on appointment of stand-by counsel would be premature, and that we should leave that issue to another day when the matter is properly before this court.

Let a writ of mandate issue compelling the trial court to set aside its order of August 25, 1975, and to proceed in a manner not inconsistent with this opinion.

KANE, J.—While *Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525] mandates the result which we reach in this case, it need not be accepted without protest.

The basic rationale for the majority opinion in *Faretta* is that "The right to defend is personal." (*Faretta* v. *California, supra,* at p. 834 [45 L.Ed.2d at p. 581].) While this principle may be valid as an abstract proposition, or even in an historical context when the legal process was rudimentary (see *People* v. *Sharp* (1972) 7 Cal.3d 448, 453 [103 Cal.Rptr. 233, 499 P.2d 489]), it is, in my opinion, totally inconsistent with the realities of modern life and contrary to a steady trend of the United States Supreme Court itself to advocate the assistance of counsel at every critical stage of the criminal process. (*Powell* v. *Alabama* (1932) 287 U.S. 45 [77 L.Ed. 158, 53 S.Ct. 55, 84 A.L.R. 527]; *Johnson* v. *Zerbst* (1938) 304 U.S. 458 [82 L.Ed. 1461, 58 S.Ct. 1019, 146 A.L.R. 357]; *Gideon* v. *Wainwright* (1963) 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733].)

The cry of incompetency of counsel is now a frequent basis for appellate review of criminal convictions. No lesser source than the Chief Justice of the United States contends that the caliber of trial advocacy in this country is not at all what it should be.

If lawyers—educated and trained in the substantive and procedural morasses of the law—can be found to be incompetent, how can the courts honestly expect the untrained, inexperienced defendant to measure up to even the barest standards of competency?

The legal process can survive only so long as it has the respect and support of the people it serves. A felony trial in which a defendant is representing himself is a veritable breeding ground for interruptions, disruptions and endless admonitions to the jury to disregard improper questions or statements by the defendant (which he may honestly not realize are improper). In addition the trial judge is further burdened by the inevitable role of law-teacher which is thrust upon him.

The prosecution is also placed in an untenable position by the appearance of a pro se defendant. How does the prosecutor deal with the defendant in such matters as discovery, stipulations, and the myriad procedural steps that normally are worked out between trial counsel? How does the prosecutor talk to the defendant, i.e., must he admonish the defendant prior to every conversation that anything said might be used against him later?

These are simply brief examples of the types of problems unfortunately created by *Faretta.* They represent a serious and wholly unnecessary assault on the integrity of our criminal trial process.

As pointed out in *People* v. *Sharp, supra,* at page 457, "social and judicial changes which have taken place during the almost 200 years [of constitutional interpretation and construction by the United States Supreme Court] require greater rather than lesser limitations on the right of self-representation."

*Faretta's* rejection of this sound view is, in my opinion, a step in the wrong direction, a step which we can only hope is not embedded in perpetuity.

**ROUSE, J.**—I concur.

Because we are bound by the decisions of the United States Supreme Court on federal constitutional questions, I must concur in the result. However, in this instance I am more inclined to share the view expressed by Chief Justice Burger in his dissenting opinion in *Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525], namely, that the proper administration of justice is "ill-served, and the integrity of and public confidence in the system are undermined, when an easy conviction is obtained due to the defendant's ill-advised decision to waive counsel." (P. 839 [45 L.Ed.2d at p. 584].) The court itself recognized and identified the hazard of self-representation when it pointed out that " 'Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true is it of the ignorant and illiterate, or those of feeble intellect.' " (*Faretta* v. *California, supra,* fn. 43, p. 833, citing *Powell* v. *Alabama* (1932) 287 U.S. 45, 69 [77 L.Ed. 158, 170, 53 S.Ct. 55, 84 A.L.R. 527].)

The notion that "he has made his bed—now let him lie in it," has no place in our system of justice. Thus, it appears unrealistic for us to assume that, once he has elected to represent himself, a defendant will not be heard to claim inadequacy of representation as a basis for reversal of his conviction. (See *Faretta* v. *California, supra,* fn. 46, pp. 834-835 [45 L.Ed.2d at p. 581].) As appellate judges, we would be seriously remiss in our obligations to our office and justifiably subject to public censure if we blithely affirmed a judgment of conviction where the record before us was replete with prejudicial error, all due to the obvious inability of the accused to properly present his defense. Nor can I agree with a footnote suggestion in the majority's opinion (see *Faretta* v. *California, supra,* fn. 46, pp. 834-835 [45 L.Ed.2d at p. 581]) that the possibility that many criminal defendants representing themselves may use the courtrooms for deliberate disruptions of their trials can be dealt with readily by the trial judge terminating self-representation. Recent experience has dramatically demonstrated that by the time such a sanction is imposed by a trial judge, irreparable damage may have been done.

The fact that, historically, the right of self-representation has been recognized by federal statute and by some states seems hardly a sufficient basis, in and of itself, to justify the continuance of such an ill-advised practice. I have detected little reluctance on the part of the court in recent times to overturn historical precedents in order to adapt our laws to the rapidly changing needs of a growing society. In fact, our citizens take great pride in acknowledging the wisdom and foresight of the founding fathers in drafting a Constitution which is sufficiently flexible in its terms to permit its application to our more complex way of life. Allowing an untrained and unskilled accused to represent himself in today's complicated legal arena is, I submit, totally repugnant to our enlightened concept of due process.