[Crim. No. 21548. Nov. 10, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
MARINEY JOSEPH, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Supreme Court, Edward H. Schulman and J. Courtney Shevelson, Deputy State Public Defenders, for Defendant and Appellant.

George Deukmejian and John K. Van de Kamp, Attorneys General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Howard J. Schwab, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BIRD, C. J.**—This is an automatic appeal from a judgment imposing a penalty of death. (See Pen. Code, § 1239, subd. (b).)[1]

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

## I.

Appellant Mariney Joseph was convicted by a jury of the first degree murder of Oscar Dent. (§§ 187, 189.) The jury found that he used a firearm in the commission of the murder (§§ 12022.5, 1203.06, subd. (a)(1)), and that the murder was committed during the commission or attempted commission of a robbery. (§ 190.2, subds. (a)(17)(i) and (b).) Appellant was also convicted of the robbery of Lou Reynolds; allegations of firearm use (§ 12022.5) and great bodily injury (§ 12022.7) were found to be true. The Dent-Reynolds offenses arose out of a single incident in which appellant and one or possibly two other men went to a house to rob its residents of money. The jury also convicted appellant of six additional counts of robbery, each with firearm use. These offenses arose out of a separate incident which occurred at a shoeshine parlor approximately one month before the Dent-Reynolds offenses.

Neither party presented any evidence at the penalty phase. (§§ 190.3, 190.4.) The jury fixed the penalty at death.

## II.

The only claim of error this court need address is appellant's contention that the trial court erred in denying his timely motion to represent himself. (*Faretta v. California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525].) The record indicates that an unequivocal assertion of appellant's desire to proceed *pro se* was made well in advance of trial. As a result, the denial of that motion constituted error. Since the erroneous denial of a timely proffered *Faretta* motion is reversible per se, the judgment of conviction must be set aside.

## A.

Some five months prior to the commencement of trial and before any pretrial motions had been heard, appellant and his appointed counsel, Mr. Armstrong, appeared for a pretrial conference. Counsel informed the court that he and appellant had "such a basic difference" on how the case should be handled that it was impossible for Armstrong to continue representing him. Armstrong also informed the court that appellant was requesting to represent himself. The following colloquy ensued:

"THE COURT: Are you asking to be relieved, Mr. Armstrong?

"MR. ARMSTRONG: Yes, Your Honor.

"THE COURT: That's your request, Mr. Joseph?

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: This is a homicide matter which, according to the pleadings, is a possible death penalty case.

"THE DEFENDANT: I am aware of that, Your Honor. That's why I want to put on the defense, Your Honor, and I don't have the confidence in Mr. Armstrong on putting on the type of defense that I feel should be put on for me at this time in the case.

". . . . . . . . . . . . . . . . . . . . . . . . .

"THE COURT: Have you ever represented yourself?

"THE DEFENDANT: No, I haven't.

"THE COURT: In any type of a case other than traffic tickets?

"THE DEFENDANT: No, sir, I haven't.

"THE COURT: How long have you gone to school?

"THE DEFENDANT: One year of college.

"THE COURT: Have you ever studied law?

"THE DEFENDANT: No.

"THE COURT: Legal procedures, evidence, or any of those matters?

"THE DEFENDANT: No, Your Honor, I haven't.

"THE COURT: Do you feel that you are up to representing yourself on this type of a serious charge?

"THE DEFENDANT: I don't feel that equipped at this moment, Your Honor, but I will be by the time trial come [sic] up if you allow me to go pro per and give me access to the law library in the County Jail.

"MR. FELDMAN [District Attorney]: Perhaps the court should mention to the defendant that [sic] would be pro per for trial in chief and penalty phase, if it comes to that.

"If they determine that 190.2 is in order, that he be pro per in both of those and not through one and then get an attorney and then continue for the attorney to prepare himself and that type of thing. That's what I am most concerned about.

"THE COURT: There are actually two motions: One that Mr. Armstrong is requesting that he be relieved from appointment to represent the defendant and then the defendant is saying he wants to represent himself.

". . . . . . . . . . . . . . . . . . . . . . . .

"THE COURT: You are asking to be relieved because you feel you cannot continue to represent the defendant?

"MR. ARMSTRONG: That's right, Your Honor.

"I feel that Mr. Joseph is an intellegent [*sic*], knowledgeable person. But his view of how to handle this case and mine are so absolutely divergent that I think that attempting to go through a trial, feeling as we do, would be a shambles, because I couldn't control the situation. I know that he would be dissatisfied with any procedure that I would try to do.

"I just feel that I can't be effective in representing him.

"THE DEFENDANT: That's my feelings [*sic*] also, Your Honor.

"THE COURT: Mr. Armstrong is relieved.

"MR. ARMSTRONG: Thank you, Your Honor.

"THE COURT: Now the question, Mr. Joseph, is whether the court will permit you to represent yourself or appoint other counsel.

"THE DEFENDANT: Your Honor, I request that the court would allow me to go pro per so I can defend myself.

"This is a situation where I would be fighting for my life. At this point, Your Honor, I don't feel like anyone would fight as hard for my life, and I am going to fight for my own life. I sincerely hope the court would allow me to represent myself in this matter.

"THE COURT: You have had some experience in this area?

"THE DEFENDANT: No, Your Honor, I don't.

"THE COURT: This is a possible capital offense.

"THE DEFENDANT: I understand that.

"THE COURT: I have relieved counsel only because he has asked to be relieved because of the difference between you and counsel in your private discussions.

"The court feels, because of the nature of the charge, you are not able to represent yourself adequately and your request to go pro per is denied.

"The court will consider appointing other counsel to represent you.

"You were originally represented by Mr. Sanner. Do you wish to have Mr. Sanner reappointed?

"THE DEFENDANT: No, sir. No, sir. Under no circumstances.

"THE COURT: I will advise you that in the areas of representation by counsel that the attorney basically controls the proceedings. The one exception to that, however, is whether you wish to take the stand in your own behalf. That's a decision that is actually under the case law of California left up to the defendant, even though it may not always be in his best interests in the evaluation of experienced trial counsel.

"In other areas the attorney is in charge of the case and with his experience and knowledge is in a better position to evaluate the best was [sic] to defend you.

"When a person represents himself they [sic] are bound by the same rules, they are required to conduct themselves in court consistent with the established rules and procedures and decorum.

"This is just for your information.

"Your request to go pro per, because this is a capital case, is denied.

"The court finds that you are not able to represent yourself effectively because of the nature of the charge and I will appoint other counsel.

"THE DEFENDANT: Your Honor, I feel that I can represent myself.

"THE COURT: Your request to go pro per is denied."

The trial court then appointed John Torribio as defense counsel, who continued in that capacity throughout the trial.

### B.

■ Almost a decade ago, the United States Supreme Court held that under the Sixth and Fourteenth Amendments, a criminal defendant who is competent may waive the right to counsel and represent himself. (*Faretta v. California, supra,* 422 U.S. at pp. 807, 819-821 [45 L.Ed.2d at pp. 566, 572-574].) That holding was premised on the "nearly universal conviction, on the part of our people as well as our courts, that forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so." (*Id.,* at p. 817 [45 L.Ed.2d at p. 572].)

■ Once a defendant proffers a timely motion to represent himself, the trial court must proceed to determine whether "he voluntarily and intelligently elects to do so . . . . If these conditions are satisfied, the trial court must permit an accused to represent himself without regard to the apparent lack of wisdom of such a choice and even though the accused may conduct his own defense ultimately to his own detriment." (*Ferrel* v. *Superior Court* (1978) 20 Cal.3d 888, 891 [144 Cal.Rptr. 610, 576 P.2d 93]; see *People* v. *Teron* (1979) 23 Cal.3d 103, 113 [151 Cal.Rptr. 633, 558 P.2d 773], disapproved on another point in *People* v. *Chadd* (1981) 28 Cal.3d 739, 750, fn. 7 [170 Cal.Rptr. 798, 621 P.2d 837].)

The only determination a trial court must make when presented with a timely *Faretta* motion is " 'whether the defendant has the mental capacity to waive his constitutional right to counsel with a realization of the probable risks and consequences of his action.' [Citations.] It is not, however, essential that defendant be competent to serve as counsel in a criminal proceeding [citation]; 'his technical legal knowledge, as such, [is] not relevant to an assessment of his knowing exercise of the right to defend himself.' (*Faretta* v. *California, supra,* 422 U.S. at p. 836 [45 L.Ed.2d 562, 582].)" (*People* v. *Teron, supra,* 23 Cal.3d at p. 113.) One need not pass a "minibar examination" in order to exhibit the requisite capacity to make a valid *Faretta* waiver. (*People* v. *Torres* (1979) 96 Cal.App.3d 14, 22 [157 Cal.Rptr. 560].)

This court has held that once "a motion to proceed *pro se* is timely interposed, a trial court must permit a defendant to represent himself upon ascertaining that he has voluntarily and intelligently elected to do so, irrespective of how unwise such a choice might appear to be." (*People* v. *Windham* (1977) 19 Cal.3d 121, 128 [137 Cal.Rptr. 8, 560 P.2d 1187].) These procedures apply equally to the guilt phase of a capital case. (*People*

v. *Teron, supra,* 23 Cal.3d at p. 113; *Thomas* v. *Superior Court* (1976) 54 Cal.App.3d 1054, 1058 [126 Cal.Rptr. 830].)

 The record establishes that appellant's *Faretta* motion was timely proffered. The request was made some five months before trial and almost two months before any pretrial motions were heard. ██ ██ ██ The timing of appellant's motion clearly negates any conclusion that the motion was made as a delaying tactic.[2] Thus, the trial court lacked discretion to deny the motion as untimely. (See *People* v. *Tyner* (1977) 76 Cal.App.3d 352, 354-355 [143 Cal.Rptr. 52]; *People* v. *Freeman* (1977) 76 Cal.App.3d 302, 306-307 [142 Cal.Rptr. 806].)

The record also establishes that appellant was competent to waive counsel. Appellant repeatedly acknowledged his awareness of the seriousness of the charges and of the potential death penalty which they carried. ██ ██ ██ ██ Nothing in the record supports a conclusion that appellant did not know what he was doing and/or lacked the capacity to waive counsel.[3] "Since appellant's decision was clearly knowing and intelligent, the judge was bound to grant appellant's request." (*People* v. *Wilks* (1978) 21 Cal.3d 460, 468 [146 Cal.Rptr. 364, 578 P.2d 1187].)

The record also demonstrates that the reason appellant's *Faretta* motion was denied was because of the nature of the charge, and not because he

---

[2]This court has held that the purpose of the timeliness requirement is to prevent a "misuse [of] the *Faretta* mandate as a means to unjustifiably delay a scheduled trial or to obstruct the orderly administration of justice." (*People* v. *Windham, supra,* 19 Cal.3d at p. 128, fn. 5.) Thus, when an accused makes a *Faretta* motion during trial, the court is not required—as it is when such a motion is made well before trial—to grant it. Rather, "the trial court shall inquire *sua sponte* into the specific factors underlying the request thereby insuring a meaningful record in the event that appellate review is later required." (*Id.,* at p. 128.)

[3]Respondent argues that because the request to go pro. per. was "really tagged along with a request to relieve counsel," appellant's request was not truly unequivocal but rather was "in effect" a motion to relieve Attorney Armstrong due to their differences.

That interpretation belies the record. As the excerpt quoted from the transcript indicates, the trial judge recognized that appellant proffered *two* separate motions, one to relieve Attorney Armstrong and the other to represent himself. The latter was heard after the former was granted. At that time, appellant made it clear that he and he alone "want[ed] to put on the defense . . . ."

It should be noted that these two motions are fundamentally different. Whether a motion to relieve counsel should be granted depends not on whether an accused possesses the capacity to waive counsel, but rather on whether "failure to do so would substantially impair or deny the right to assistance of counsel . . . ." (*People* v. *McKenzie* (1983) 34 Cal.3d 616, 629 [194 Cal.Rptr. 462, 668 P.2d 769]; *People* v. *Marsden* (1970) 2 Cal.3d 118, 123-124 [84 Cal.Rptr. 156, 465 P.2d 44]; see *People* v. *Munoz* (1974) 41 Cal.App.3d 62, 66 [115 Cal.Rptr. 726].)

Moreover, it is not at all uncommon for a *Faretta* motion to accompany an accused's request to dismiss court-appointed counsel. (See, e.g., *People* v. *Windham, supra,* 19 Cal.3d at p. 125; *People* v. *Ruiz* (1983) 142 Cal.App.3d 780, 785-787 [191 Cal.Rptr. 249].) The mere fact that the two motions are made in the same proceeding does not compel the conclusion that the *pro se* motion and its attendant waivers are unintelligent or unknowing.

lacked the capacity to waive his right to counsel. As the quoted excerpt indicates, the court repeatedly reminded appellant that "[t]his is a possible capital offense," and explained that "because of the nature of the charge, [appellant was] not able to represent [himself] adequately . . . ."

However, the nature of the charge is irrelevant to the decision to grant or deny a timely proffered *Faretta* motion. If, as in this case, the accused is fully aware " 'of the probable risks and consequences of his action' " (*People* v. *Teron, supra,* 23 Cal.3d at p. 113),[4] then whether a guilty verdict can subject the accused to a state prison term or only a fine or short jail term is of no consequence.

As the court found in *Faretta,* "[t]he record affirmatively shows that [appellant] was literate, competent, and understanding, and that he was voluntarily exercising his informed free will." (422 U.S. at p. 835 [45 L.Ed.2d at p. 582].) The trial court's denial of appellant's motion to represent himself was error.

## C.

■ The next question concerns whether the erroneous denial of appellant's timely proffered *Faretta* motion compels a reversal of the judgment. Appellant urges application of the "reversible per se" standard, while respondent contends that the error must be analyzed under the "harmless beyond a reasonable doubt" test of *Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 711, 87 S.Ct. 824, 24 A.L.R.3d 1065]. The *Faretta* opinion left this question open since the judgment was vacated without any discussion of prejudice. (See *Faretta, supra,* 422 U.S. at p. 836 [45 L.Ed.2d at p. 582].)[5] To date, this court has not taken a position on this

---

[4]*Faretta* holds that an accused seeking to represent himself must "be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' " (*Faretta, supra,* 422 U.S. at p. 835 [45 L.Ed.2d at p. 582].) California cases interpreting *Faretta* have prescribed certain admonitions which may comport with this requirement. (See, e.g., *People* v. *Lopez* (1977) 71 Cal.App.3d 568, 572-574 [138 Cal.Rptr. 36].)

Very few admonitions were given appellant in this case. However, that omission does not compel the conclusion that the trial court was correct in denying appellant's *pro se* motion. If a trial court could insulate an erroneous denial of *Faretta* status by a failure to give the proper warnings, the *Faretta* doctrine would be rendered a nullity. Since the record shows that the trial court denied the motion because of the nature of the case and not because of appellant's incapacity to waive counsel, the court's failure to give a fuller explanation of the pitfalls of self-representation cannot be said to have rendered appellant's request any less knowing.

[5]One Court of Appeal nevertheless reads *Faretta* as "requir[ing] vacation of the judgment, without regard to whether defendant had been prejudiced in the outcome of the trial." (*People* v. *Carroll* (1983) 140 Cal.App.3d 135, 142 [189 Cal.Rptr. 327].)

issue, and expressly reserved the question in *People* v. *Windham, supra,* 19 Cal.3d at page 131, footnote 7.

The primary motivation for the *Faretta* rule is respect for the accused's freedom of choice to personally conduct his own defense. (*Faretta, supra,* 422 U.S. at p. 834 [45 L.Ed.2d at p. 581]; *United States* v. *Dougherty* (D.C. Cir. 1972) 473 F.2d 1113, 1128; *People* v. *McDaniel* (1976) 16 Cal.3d 156, 165 [127 Cal.Rptr. 467, 545 P.2d 843]; *People* v. *Freeman, supra,* 76 Cal.App.3d at p. 309.) Only a per se rule of reversal will ensure that the accused's freedom of choice will be scrupulously honored out of " 'respect for the individual which is the lifeblood of the law.' " (*Faretta, supra,* 422 U.S. at p. 834 [45 L.Ed.2d at p. 581]; *People* v. *Freeman, supra,* 76 Cal.App.3d at p. 309.)

The right to proceed *pro se* "is designed to safeguard the dignity and autonomy of those whose circumstances or activities have thrust them involuntarily into the criminal process. . . . [¶] . . . Even if the defendant will likely lose the case anyway, he has the right—as he suffers whatever consequences there may be—to the knowledge that it was the claim that he put forward that was considered and rejected, and to the knowledge that in our free society, devoted to the ideal of individual worth, he was not deprived of his free will to make his own choice, in his hour of trial, to handle his own case." (*United States* v. *Dougherty, supra,* 473 F.2d at p. 1128; see also *Chapman* v. *United States* (5th Cir. 1977) 553 F.2d 886, 891-892.)

These principles compel the conclusion that a trial court's error in denying an accused the opportunity to plead his own cause cannot be rectified by a "Monday morning quarterback" determination that no prejudice ensued by forcing an accused to go to trial represented by counsel. Any rule which purported to assess the quality of a would-be *Faretta* accused's representation by the harmless error standard would inevitably erode the *pro se* right itself. Moreover, an assessment of why or how an accused's trial was disadvantaged by injecting an undesired attorney into the proceedings would require an impossibly speculative comparison between the accused's undisclosed *pro se* strategy and that of counsel. No appellate court can or should engage in that kind of analysis when such fundamental rights hang in the balance.

The two Court of Appeal decisions which have discussed what standard of prejudice should apply have held that the erroneous denial of a timely *Faretta* motion compels reversal without an assessment of prejudice.[6] In

---

[6]Another Court of Appeal has held, without discussion, that "[t]he erroneous deprivation of such timely asserted constitutional rights . . . is patently prejudicial and reversible error which cannot be considered as harmless." (*People* v. *Herrera* (1980) 104 Cal.App.3d 167, 175 [163 Cal.Rptr. 435].) Still another has stated in dictum that "the erroneous denial of a timely *Faretta* motion is per se reversible." (*People* v. *Ruiz, supra,* 142 Cal.App.3d at p. 788.)

*People* v. *Tyner, supra,* 76 Cal.App.3d 352 the court held that the erroneous denial of a timely motion for self-representation "simply does not lend itself to review by any standard short of per se reversal." *(Id.,* at p. 356.) As the court explained, "[t]he evidence presented when an attorney rather than the defendant has control over the court proceedings and the exclusive authority to make decisions as to matters of trial tactics . . . will inevitably be at a variance with that adduced when the defendant is self-represented. While we could easily speculate that the evidentiary picture would almost certainly be worse when a defendant represents himself, such is not necessarily so. Nor do we discount the fact that the jury might be favorably impressed by listening to the voir dire, opening statement and closing argument by a *Faretta* defendant. Adoption of any other standard would tend to eviscerate the *Faretta* holding." *(Ibid.)*

The court in *People* v. *Freeman, supra,* 76 Cal.App.3d 302, came to the identical conclusion, holding that "application of the result-oriented harmless-error doctrine . . . would render the right of self-representation virtually unenforceable in most cases, thereby effectively nullifying the right itself." *(Id.,* at p. 309.) The court observed that in most criminal prosecutions, the presence of counsel over a would-be *Faretta* defendant's objection would result in no prejudice, since, as the *Faretta* court itself observed, " '[i]t is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts.' " *(Id.,* at p. 310, citing *Faretta, supra,* 422 U.S. at p. 834 [45 L.Ed.2d at p. 581].)[7]

The federal courts are in general agreement with California courts on this issue. At least two federal circuit courts of appeals have held that the erroneous denial of a timely asserted *Faretta* motion requires reversal of the judgment without an assessment of prejudice. *(Bittaker* v. *Enomoto* (9th Cir. 1978) 587 F.2d 400, 402-403), cert. den. (1979) 441 U.S. 913 [60 L.Ed.2d 386, 99 S.Ct. 2013]; *Chapman* v. *United States, supra,* 553 F.2d at

---

[7]Respondent argues that there is a division of authority among Courts of Appeal on this question. He cites *People* v. *Manson* (1977) 71 Cal.App.3d 1, 50 [139 Cal.Rptr. 275], for the proposition that the wrongful denial of a *Faretta* motion is subject to the harmless error test.

*Manson* did not so hold. That court held that the trial court committed no error in denying a *pro se* motion, since (1) the motion was made before *Faretta* had been decided and this court's decision in *People* v. *McDaniel, supra,* 16 Cal.3d at p. 163 [127 Cal.Rptr. 467, 545 P.2d 843] held that *Faretta* was not retroactive; (2) *Faretta* status could properly be denied where, as in *Manson,* the accused engaged in disruptive conduct (cf. *People* v. *McKenzie, supra,* 34 Cal.3d at p. 636); (3) Manson lacked the capacity to make an intelligent *Faretta* waiver; and (4) Manson's offer to plead guilty, had it been accepted, would have rendered his motion moot. Although the court noted that "the denial of his right to act as his own attorney was not prejudicial" *(id.,* at p. 50), that statement must be understood in the context of the holding that no error occurred.

pp. 891-892.) A few pre-*Faretta* circuit court of appeals decisions reached the same conclusion under the federal Constitution (*United States* v. *Plattner* (2d Cir. 1964) 330 F.2d 271, 273) or the federal statutes. (*United States* v. *Dougherty, supra,* 474 F.2d at pp. 1127-1130; *United States* v. *Price* (9th Cir. 1973) 474 F.2d 1223, 1227 [interpreting *pro se* rights guaranteed under 28 U.S.C. § 1654]; see also *Lowe* v. *United States* (7th Cir. 1969) 418 F.2d 100, 103 [dictum].) On the other hand, at least one circuit court of appeals decision prior to *Faretta* assumed that the question of prejudice was relevant to the issue of reversal. (See *Butler* v. *United States* (8th Cir. 1963) 317 F.2d 249, 258 [6 A.L.R.3d 582], cert. den. (1963) 375 U.S. 838 [11 L.Ed.2d 65, 84 S.Ct. 77]; see generally Annot., Accused's Right to Represent Himself (1976) 27 A.L.R.Fed. 485, 517-523; Annot. (1980) 98 A.L.R.3d 13, 28-29.)

This court's enunciation of a per se rule of reversal where *Faretta* error is involved is thus consistent with the holdings of most courts which have considered the issue. Anything short of a per se rule is unworkable and would undermine the *Faretta* doctrine itself.

Since the denial of appellant's fundamental *pro se* right cannot "be redeemed through . . . the subsequent conclusion that [appellant's] practical position has not been disadvantaged" (*United States* v. *Dougherty, supra,* 473 F.2d at p. 1128), the judgment must be reversed.

III.

Since the reversal of judgment is necessitated by the erroneous denial of appellant's *pro se* motion, numerous other contentions of error raised by appellant will not be reached.

The judgment is reversed.

Kaus, J., Broussard, J., Reynoso, J., and Grodin, J., concurred.

**MOSK, J.**—I concur.

In doing so, however, I must express some of the unease addressed by Justice Richardson in his separate opinion. The right declared in *Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525], is not as absolute as the majority opinion implies. Under some circumstances there may be a limitation on the right of self-representation, particularly in a capital case.

Although it is axiomatic that ordinarily a defendant controls the substance of his defense, in *People* v. *Chadd* (1981) 28 Cal.3d 739 [170 Cal.Rptr.

798, 621 P.2d 837], we refused to permit a capital defendant to plead guilty over the objection of his attorney (Pen. Code, § 1018). We declared (at p. 752): "*Faretta* does not grant a capital defendant the right to 'defend' himself by discharging his counsel and waiving his automatic appeal." The state has an interest in the proceedings that cannot be extinguished.

We have consistently refused to permit a defendant in a capital case to waive his right to appeal after conviction. In *Massie* v. *Sumner* (9th Cir. 1980) 624 F.2d 72, certiorari denied, 449 U.S. 1103 [66 L.Ed.2d 828, 101 S.Ct. 899], a defendant under a California sentence of death had attempted unsuccessfully to waive his automatic appeal in this court; he sought federal habeas corpus on the ground, inter alia, that such a compulsory proceeding violates his right of self-representation under *Faretta*. Affirming a denial of relief, the circuit court reasoned: "While Massie is correct in that he enjoys a constitutional right to self-representation, *this right is limited* and a court may appoint counsel over an accused's objection in order to protect the public interest in the fairness and integrity of the proceedings." (Italics added; *id.* at p. 74.) The court stressed that "a state may require reasonable proceedings in order to protect its own interests in the fairness of its determinations. In the same sense that a state may constitutionally require competency evaluations, a factual basis for a guilty plea, and other routinely accepted proceedings, it may also require a higher court review of a death sentence and conviction." (*Ibid.*) The reason for this rule, said the court, is that "The state of California has a strong interest in the accuracy and fairness of all its criminal proceedings; this interest is most pronounced in a case such as this where a defendant pleaded guilty and was sentenced to death without the assistance of counsel." (*Ibid.*)

Again in *People* v. *Stanworth* (1969) 71 Cal.2d 820, 833 [80 Cal.Rptr. 49, 457 P.2d 889], another case in which a capital defendant personally sought to dismiss his automatic appeal, we said: "It is manifest that the state in its solicitude for a defendant under sentence of death has not only invoked on his behalf a right to review the conviction by means of an automatic appeal but has also imposed a duty upon this court to make such review. We cannot avoid or abdicate this duty merely because defendant desires to waive the right provided for him. In other contexts it has been held that a defendant's waiver or attempted waiver of a right is ineffective where it would involve also the renunciation of a correlative duty imposed upon the court."

To the same effect is *People* v. *Ballentine* (1952) 39 Cal.2d 193 [246 P.2d 35]. Indeed, the colloquy in that case between the defendant and the trial judge could have almost been taken from the transcript of the case before us. (*Id.* at pp. 194-195.)

What I am suggesting by the foregoing references is that the defendant's *Faretta* right of self-representation in capital cases is not unlimited. He does not have a blank check. He cannot plead guilty and abandon his appeal rights directly, and he should not be allowed to do so indirectly by an inept performance.

If a trial judge, in protecting the state's "strong interest in the accuracy and fairness of all its criminal proceedings," decides that a defendant facing a potential death sentence requires the assistance of competent counsel, we should be reluctant to second-guess his conclusion. Had the trial judge here based his determination unequivocally on the inability of this defendant to handle a capital case, rather than merely on the nature of the case, I would not concur in the majority opinion.

**RICHARDSON, J.**—I concur in the judgment.

The trial court in this death penalty case took the understandable position that, because of the serious nature of the charges facing defendant, he should not be permitted to represent himself. Such a solicitous approach, however, evidently violated *Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525], which limits the trial court's inquiry to the issue whether the defendant knowingly and intelligently waived his right to counsel, and was "aware of the dangers and disadvantages of self-representation . . . ." (P. 835 [45 L.Ed.2d at p. 582].) It is not, however, essential that defendant be competent to serve as counsel in a criminal case. (P. 836 [45 L.Ed.2d at p. 582].) It is enough that he intelligently waive his right to an attorney and that he understand the risks. This formulation may be dubious but it is the law, even in a capital case. (See *ibid.*; *People* v. *Teron* (1979) 23 Cal.3d 103, 113 [151 Cal.Rptr. 633, 588 P.2d 773]; *Ferrel* v. *Superior Court* (1978) 20 Cal.3d 888, 891 [144 Cal.Rptr. 610, 576 P.2d 93].) The record herein indicates that defendant was competent to waive his right to counsel and that he understood the consequences of his awesome decision.

Could an erroneous denial of defendant's self-representation right ever be deemed a harmless error? The majority concludes not, holding that an improper denial of a *Faretta* right is reversible per se. I acknowledge that several state and federal cases (cited by the majority) so hold. Nevertheless, I observe that the United States Supreme Court has not yet expressly decided the point (see *Faretta, supra,* at p. 852 [45 L.Ed.2d at pp.591-592] [dis. opn. of Blackmun, J.]).

It is certainly arguable that a harmless error standard should be employed in some cases. If, for example, the record demonstrated that the defendant

was adequately represented by competent counsel, that the evidence of guilt was overwhelming, and that no tactical conflicts arose between attorney and client, we might well conclude that denial of self-representation was harmless beyond a reasonable doubt. (See *Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065]; cf. *Wiggins* v. *Estelle* (5th Cir. 1982) 681 F.2d 266, 273-274 [applying a harmless error standard where the appointment of assistant counsel interfered with defendant's self-representation right]).

Accordingly, although I concur in the present judgment, I do so with considerable reservations regarding the appropriate harmless error standard, and I await further instruction on the point from the high court which originated the *Faretta* principle.

Respondent's petition for a rehearing was denied December 22, 1983.