[No. B113920. Second Dist., Div. Seven. Aug. 19, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
ERRINGTON FITZPATRICK, Defendant and Appellant.

**COUNSEL**

Ivy K. Kessel, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Robert F. Katz and Erika D. Jackson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WOODS, J.**—Despite a lengthy jury trial involving 25 felony charges (robbery, carjacking, etc.), numerous firearm enhancements, and multiple felony conviction allegations which culminated in a 404-year 6-month state prison sentence, appellant claims but one error.

Appellant claims his right to represent himself (*Faretta* v. *California* (1975) 422 U.S. 806 [95 S.Ct. 2525, 45 L.Ed.2d 562]) was improperly revoked and since the error is reversible per se (*People* v. *Joseph* (1983) 34 Cal.3d 936 [196 Cal.Rptr. 339, 671 P.2d 843]), the entire judgment must be reversed. We find the trial court (Superior Court Judge Michael R. Hoff) was justified in revoking appellant's pro se status and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Since appellant's contention raises no trial issues it is unnecessary to detail the trial evidence. This synopsis will suffice.

During a three-week period in May 1995 appellant committed a series of armed robberies and carjackings in Glendale and North Hollywood. Most occurred in underground residential garages. Appellant would confront the driver and passenger with a gun and take their purses, jewelry, money, and sometimes their car. The last robbery occurred May 23, 1995. Two days later, May 25, 1995, appellant was arrested in San Bernardino. In his possession were a gun and purses and jewelry belonging to the robbery victims. He was transported to the North Hollywood station and held in custody.

Three days later, on May 28, 1995, appellant attempted to escape. When Officer Sara Delacerda opened his cell door appellant tried to grab her keys, pushed the door open, bumped her, causing her to fall, and ran toward a door leading to the main hallway. Another officer heard Officer Delacerda's cries for help and, with drawn gun, captured appellant.

Appellant was placed in a rear felony cell.

The next morning, May 29, 1995, an officer searched appellant's cell and discovered preparations for another escape attempt:[1] The bunk bed had been moved, the mattress ripped, the ceiling light removed and dismantled, and shoelaces created from sweatshirt strips.

Felony charges were filed and on June 23, 1995, the matter was set for preliminary hearing. Appellant, represented by the public defender, made a *Marsden* (*People* v. *Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44]) motion which the magistrate denied. Appellant then made a

---

[1]Appellant was charged with attempting to escape (count 10) but convicted only of a lesser related offense of vandalism.

*Faretta* motion but when appellant gave an indication he was merely dissatisfied with his present counsel, the magistrate denied the motion.[2] The hearing began but did not end that day. Appellant agreed the hearing could resume Monday, June 26, 1995.

It did not do so. On June 26, 1995, when the magistrate said, "We will resume the preliminary hearing in this matter," appellant said "No." Appellant disrupted the proceeding by "talking to demons," claiming he saw nonexistent people, screaming and generally feigning mental illness[3] until the magistrate declared a doubt about appellant's competency (Pen. Code, § 1368) and suspended further proceedings.

Resumption of the preliminary hearing was delayed almost four months.

The superior court having found appellant competent, the matter was returned to the magistrate on October 17, 1995, for completion of the preliminary hearing. Appellant again tried to disrupt the proceedings by claiming he was "scared" and "ready to go." But this time the magistrate observed: "The bailiff's report to the Court is that you were completely lucid downstairs and that somehow in the elevator right up from the first floor to the ninth floor, I guess maybe the altitude, but somehow in between there—I believe that you are feigning—that you are acting out is not genuine [*sic*], but just a subterfuge, and I find [you] competent and Judge Shabo found you sane and competent for these proceedings."

Appellant was held to answer, bail was set at $850,000, and arraignment in superior court was scheduled for October 31, 1995. It did not happen.

On October 23, 1995, appellant escaped from the men's central jail by cutting the wire mesh on a roof and by using cut up sheets as a descending rope.

Five days later, October 28, 1995, appellant arrived in Chicago where police arrested him on the bus. He had a gun in his bag.

The arraignment was delayed six and one-half months.

On May 10, 1996, when appellant appeared for arraignment he moved for a 30-day continuance. Superior Court Judge Michael Hoff granted the motion.

---

[2]No issue is raised concerning this denial.

[3]Appellant was referred to department 95 and examined by Dr. Sara Bjit Sandhue who found him competent.

On June 10, 1996, appellant, represented by counsel, pleaded not guilty. Trial setting was scheduled for July 11, 1996.

On July 11, 1996, when appellant's counsel informed the court "We'd like to set the matter for a trial, your Honor," appellant immediately interrupted, stating: "Hold it. Excuse me, your Honor . . . ." Appellant then conferred with his counsel who informed the trial court appellant wanted to represent himself.

The court informed appellant of the risks of self-representation, inquired about his background, and then asked, "When do you think you will be ready to go to trial?" Appellant stated, "At this time I don't know"and said he doubted he could be ready in 30 days. When the court asked him "Do you think it's going to take you a year?" appellant replied, "I can't say yes or no . . ." and "it would be impossible for me to tell you, give you a time frame."

The prosecutor asked the court to consider all the delay appellant had already caused by feigning insanity during the preliminary hearing and later escaping before his superior court arraignment.

Before ruling, the court observed: "The question I have is whether you are going to be able to handle this in a timely fashion or whether this move or request on your part is simply to delay things." Again the court asked, "Can you give me a ballpark estimate of when you are going to be ready to go to trial?" Appellant declined to do so. The court asked if appellant could be ready for trial by the end of August and appellant said he wasn't sure but he'd try. The court granted appellant's motion to represent himself.

On July 25, 1996, the court returned to the subject of when appellant would be ready for trial. Appellant said he had just started his review, had "found a small discrepancy in counts 16, 17, and 18" (all involving one victim), and "it could probably take me two more months just to review that particular case."[4]

The following colloquy then ensued.

"THE COURT: Give me a straight answer.

"THE DEFENDANT: About how long?

"THE COURT: Right.

"THE DEFENDANT: In my estimate [sic] it will be over a year."

[4]That "case" was just one of 11 separate incidents represented by the 25 counts.

The court stated that was "simply too long" and it was inclined to appoint counsel. Appellant remonstrated and the court set trial for September 9, 1996.

On August 23, 1996, appellant moved for continuance. The court denied the motion.

On August 30, 1996, appellant moved for a continuance. The court denied the motion.

On September 5, 1996, appellant moved for a continuance. The court asked "how much" and appellant said "At this time 60 days." The court then revoked appellant's pro se status and appointed counsel to represent him.

The court explained its decision:

"I think that you are pulling a sham on the court system and it's just, your actions are just completely dilatory . . . the People have a right to have a fair trial. The People have a right to have a trial within a certain reasonable time period although it's not statutory. And the court has a right to process cases in an orderly fashion.

"I'm convinced that as long as you are representing yourself, you will always come up with a different reason why not to go to trial. Therefore, I'm going to revoke your pro per status status and the alternate public defender is going to be reappointed."

Thereafter appellant was represented by counsel.

Of the twenty-five counts, appellant was found not guilty of seven and an eighth was dismissed.

## DISCUSSION

"A defendant has a federal constitutional right to represent himself if he voluntarily and intelligently elects to do so. (*Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525].) In order to invoke an unconditional right of self-representation, the defendant must assert the right 'within a reasonable time prior to the commencement of trial.' A motion made after this period is addressed to the sound discretion of the trial court. . . .

"The 'reasonable time' requirement is intended to prevent the defendant from misusing the motion to unjustifiably delay trial or obstruct the orderly

administration of justice. 'For example, a defendant should not be permitted to wait until the day preceding trial before he moves to represent himself and requests a continuance in order to prepare for trial without some showing of reasonable cause for the lateness of the request. In such a case the motion for self-representation is addressed to the sound discretion of the trial court . . . .'" (*People* v. *Burton* (1989) 48 Cal.3d 843, 852-853 [258 Cal.Rptr. 184, 771 P.2d 1270].)

The right of self-representation is not absolute. It " 'is not a license to abuse the dignity of the courtroom' " and "[t]hus, 'the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct.' " (*People* v. *Clark* (1992) 3 Cal.4th 41, 115 [10 Cal.Rptr.2d 554, 833 P.2d 561].)

As our Supreme Court noted in *People* v. *Clark*, often a trial court dealing with a pro se defendant is presented "with a 'judgment call' under combat conditions upon which we may, and must, give deference to the trial court." (*People* v. *Clark, supra,* 3 Cal.4th 41, 116.)

That was the case in *People* v. *Clark* and that is the case here.

In *People* v. *Clark* the pro se defendant, who had been cross-examining a prosecution expert witness, refused to resume cross-examination and said he would remain mute for the rest of the trial. The court revoked his pro se status and had standby counsel resume the cross-examination for the remainder of the day. The next day, defendant having had a change of heart, the court reinstated his pro se status.

Clark contended his pro se status was improperly revoked because he had a right to conduct his defense by standing mute. The Supreme Court, while acknowledging he had such a right (*People* v. *Clark, supra,* 3 Cal.4th at p. 114), rejected his claim. It held the trial court was empowered to determine defendant's motivation and sincerity. Defendant's threat to stand mute "was merely one of a series of attempts to manipulate or coerce the trial court." (*Id.* at p. 115.)

" 'Trial courts are not required to engage in game playing with cunning defendants who would present Hobson's choices.' *Faretta* v. *California, supra,* 422 U.S. 806, held generally that a defendant may represent himself. It did not establish a game in which defendant can engage in a series of machinations, with one misstep by the court resulting in reversal of an otherwise fair trial." (*People* v. *Clark, supra,* 3 Cal.4th at p. 115.)

*People* v. *Clark* also upheld the trial court's later and final termination of defendant's pro se status based upon the following colloquy: "Defendant

told the court 'Your prejudices are running away with you' and accused the court of 'jumping to conclusions' and predetermining the case. When the court warned defendant about his behavior, defendant told it to 'stop that crap,' and accused the court of bias, of lying, and of having its mind made up 'from day one.' Defendant stated, 'This railroad train of yours is going to have to come to a screeching halt.' When the court once again warned defendant to behave or his in propria persona privileges would be revoked, defendant responded, 'are you trying to intimidate me? Well, you goddamn can't do that. [¶] . . . [W]ill you just back off and do your job?' "

*People* v. *Clark, supra,* 3 Cal.4th 41, stated, "The court was justified in concluding that defendant intentionally sought to disrupt and delay his trial." (*Id.* at p. 117.)

As in *People* v. *Clark,* the instant record justifies the trial court's determination that appellant was "pulling a sham" and deliberately delaying the trial. Appellant's "pretrial delays . . . would be strong evidence of a purpose to delay." (*People* v. *Burton, supra,* 48 Cal.3d 843, 854.)

Appellant's feigned mental illness (four months' delay), escape (seven and one-half months' delay), continuous motions for continuance, and "over a year" readiness estimate support the trial court's revocation order.[5]

### DISPOSITION

The judgment is affirmed.

Lillie, P. J., and Neal, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 24, 1998. Mosk, J., was of the opinion that the petition should be granted.

---

[5]Appellant's claim the trial court should have conducted a review of the curtailment of his jail in propria persona privileges is misplaced. The curtailment occurred more than two months *after* the trial court had revoked appellant's pro se status.