Filed 4/28/15  P. v. Wilkins CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>KEENAN WILKINS,<br><br>      Defendant and Appellant. | A137790<br><br>(Alameda County<br>Super. Ct. No. H46293) |

Defendant Keenan Wilkins was convicted of several charges arising out of two bank robberies.  On appeal, he contends the trial court erred in finding him mentally competent to stand trial and in failing to grant several motions under *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*) and *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).  We affirm.

## I.  BACKGROUND

Defendant was charged in an information, filed February 19, 2009, with three counts of second degree robbery (Pen. Code, § 211), seven counts of false imprisonment by violence (Pen. Code, § 236), and criminal threats (Pen. Code, § 422).  As to each robbery and false imprisonment count, the information alleged defendant's use of a firearm (Pen. Code, §§ 12022.5, subd. (a), 12022.53, subd. (b)), as well as a series of prior convictions and prior prison terms.  A second information, filed July 22, 2009, charged four additional counts of second degree robbery and alleged the same prior convictions and prior prison terms.

The two cases were consolidated, and defendant proceeded to jury trial in October 2012.  On evidence he had participated in two separate bank robberies in August 2006 and January 2007, defendant was convicted on all counts, but the jury rejected the allegation of firearm use.[1]  He was sentenced to a term of 100 years to life imprisonment.

## II.  DISCUSSION

Defendant contends the trial court erred in (1) finding him competent to stand trial, (2) denying a motion to represent himself at trial, and (3) denying various motions for substitution of appointed counsel by defendant and for relief from representation by his appointed counsel.  He also contends trial counsel rendered ineffective assistance.

### A.  *Competence to Stand Trial*

Following his arrest in 2007, defendant was found incompetent to stand trial and was hospitalized for treatment.  The next year, he was found competent and returned to jail, but the issue of his competence was never entirely absent from the proceedings.  In November 2010, counsel declared a doubt as to defendant's competence.  Following a series of hearings, the trial court concluded, in essence, that defendant's failure to cooperate with his attorney was willful malingering rather than the result of a mental disorder.  Defendant was examined for competence again in May 2011, but no further proceedings were held at that time.

Defendant's trial initially began in late September 2011.  During jury selection and the early stages of trial, defendant engaged in disruptive courtroom behavior and was eventually muzzled and shackled.  Nearly two weeks into the trial, defense counsel moved for an examination of defendant's competence, and the trial was suspended.  In November 2011, the court began a lengthy jury trial of defendant's competence, which ended in a mistrial due to jury deadlock.

In May 2012, on the day set for retrial of defendant's competency, his attorney informed the court defendant "would agree" he was competent due to the administration

---

[1] We do not discuss the evidentiary basis for defendant's convictions because it is not relevant to the issues he raises on appeal.

2

of medication.  Defendant submitted the issue of his competence to the court's decision on the basis of the evidentiary record from the 2011 competency trial.  The court subsequently found defendant competent and reinstated the criminal proceedings.

A week into the trial, which began in October 2012, defense counsel raised "concerns about the defendant's mental state."  Although acknowledging defendant's "medicines have clearly masked his former utterly irascible personality," counsel questioned his competence because he had rejected a favorable plea offer, suggesting defendant did not "fully appreciate[] the reality of his case."  In particular, counsel was concerned defendant "has no idea how serious the case against him is."  The trial court disagreed, noting defendant "seriously considered" a 24-year plea offer, illustrating his appreciation of the seriousness of his situation.  The court noted defendant's failure to grasp "what's best for him" was not evidence of a lack of competence or irrationality.  As to any claim of incompetence, the court held:  "I don't believe your client has any issues along those lines.  It is certainly much easier working with him now when he has the drugs he wants.  I don't think he has a problem maintaining unless he chooses to make issues, whatever they may be."

The law related to competence to stand trial was summarized recently in *People v. Sattiewhite* (2014) 59 Cal.4th 446:  " ' "Both the due process clause of the Fourteenth Amendment to the United States Constitution and state law prohibit the state from trying or convicting a criminal defendant while he or she is mentally incompetent.  [Citations.] A defendant is incompetent to stand trial if he or she lacks a ' "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—[or lacks] . . . a rational as well as a factual understanding of the proceedings against him." ' [Citations.]"  [Citation.]'  [Citation.] [¶] ' "Both federal due process and state law require a trial judge to suspend trial proceedings and conduct a competency hearing whenever the court is presented with substantial evidence of incompetence, that is, evidence that raises a reasonable or bona fide doubt concerning the defendant's competence to stand trial. [Citations.] . . . Evidence of incompetence may emanate from several sources, including the defendant's demeanor, irrational behavior, and prior mental evaluations.  [Citations.]"

3

[Citation.] . . . [¶] . . . '. . . [A]bsent a showing of "incompetence" that is "substantial" as a matter of law, the trial judge's decision not to order a competency hearing is entitled to great deference, because the trial court is in the best position to observe the defendant during trial.' " (*Id.* at pp. 464–465.) " ' "An appellate court is in no position to appraise a defendant's conduct in the trial court as indicating insanity, a calculated attempt to feign insanity and delay the proceedings, or sheer temper." ' " (*People v. Mai* (2013) 57 Cal.4th 986, 1033 (*Mai*).)

Once, as here, a competency hearing has been held with respect to a defendant, the situation changes. " ' "When a competency hearing has already been held and defendant has been found competent to stand trial, however, a trial court need not suspend proceedings to conduct a second competency hearing unless it 'is presented with a substantial change of circumstances or with new evidence' casting a serious doubt on the validity of that finding." ' " (*People v. Taylor* (2009) 47 Cal.4th 850, 864 (*Taylor*).) In those circumstances, "We apply a deferential standard of review to a trial court's ruling concerning whether another competency hearing must be held. [Citation.] We review such a determination for substantial evidence in support of it." (*People v. Huggins* (2006) 38 Cal.4th 175, 220.)

Prior to trial, the trial court concluded, based on evidence introduced at a lengthy competency trial conducted less than a year earlier, that defendant was competent. Defendant does not specifically challenge that finding or discuss the evidence presented at the hearing, but it was fully sufficient to support the trial court's conclusion. Although the expert testimony presented was mixed with respect to defendant's competence, at least four experts, Drs. Jessica Ferranti, Jules Burstein, John Cannell, and Todd Elwyn, testified to their conclusions that defendant was malingering, essentially faking his symptoms of mental disorder. In stipulating to a court trial on his competence in 2012, defendant agreed the court could rely on the testimony of these experts, and together their testimony and reports constitute substantial evidence to support the trial court's finding of competence.

4

Following the trial court's finding of competence a few months before trial, it was never presented with a demonstration of " ' " 'a substantial change of circumstances' " ' " or " ' " 'new evidence' casting a serious doubt on the validity of that finding." ' " (*Taylor, supra*, 47 Cal.4th at p. 864.) As noted above, during trial, counsel once questioned defendant's judgment in rejecting a plea deal and evaluating the evidence against him, but a display of poor judgment by defendant was not a new development. (See, e.g., *People v. Dunkle* (2005) 36 Cal.4th 861, 905, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421 & fn. 22 [paranoid thinking not a new development]; *People v. Lawley* (2002) 27 Cal.4th 102, 136–138 [manifestation of earlier problems not changed circumstances]; *People v. Jones* (1997) 15 Cal.4th 119, 151, disapproved on other grounds in *People v. Hill* (1998) 17 Cal.4th 800, 823 & fn. 1 [recurrence of drowsiness not changed circumstances].) This provided no grounds for reevaluating defendant's competence.

In arguing for incompetence, defendant largely cites his extreme behaviors. Standing on their own, these examples prove little or nothing with respect to defendant's competence. As the Supreme Court has noted, there is a difference between a defendant's being "mentally *unable*, rather than emotionally *unwilling*, to help with his defense." (*Mai, supra,* 57 Cal.4th at p. 1034.) "We have frequently recognized the distinction . . . and have made clear that an uncooperative attitude is not, in and of itself, substantial evidence of incompetence." (*Ibid.*) On appeal, we have no basis for concluding defendant's unusual and erratic behavior was the reflection of a mental disorder rendering him incompetent, rather than, as the trial court believed, a conscious unwillingness to cooperate.

Defendant also argues he was denied proper medication and contends he lacked competence without the medication. While there were times in the long history of this case when defendant was not treated with the type of medication he believed to be appropriate, defendant was placed on medication prior to the October 2012 trial and appears to have been taking the medication throughout the trial. At the May 2012 hearing, his attorney acknowledged that defendant was satisfied with the impact of this

medication on his mental health.  Even if the lack of medication, rather than malingering, was the cause of defendant's erratic behavior prior to and during the suspended 2011 trial, the problem had been cured by the time of the trial at which he was convicted.

## B.  Faretta *Error*

Defendant contends the trial court erred in denying his motion for permission to represent himself, made prior to the 2011 trial that was ultimately suspended.[2]

In August 2011, prior to the scheduled start of defendant's first trial in September 2011, defendant made two *Faretta* motions, seeking leave to represent himself at trial.  At the hearing of the first motion, on August 5, defendant explained he wanted to represent himself because his assigned attorney, although "one of the greatest," did not have sufficient time to devote to his case.  As the court and defendant discussed the advantages of retaining his attorney, it became clear defendant had made the motion in large part because he was concerned he could not control his conduct sufficiently to work with counsel unless he was receiving psychiatric medication, which had been denied him. Defense counsel, in fact, had filed a motion to withdraw because, as defendant characterized it, "He's of the opinion that I need meds."  Defendant told the court:  "It's no way I can keep [appointed counsel] without dealing with the medication issue. [¶] . . . [¶] . . . I believe the problem is medication.  If I can be evaluated or take medication I believe we can get along."  The court told defendant it would not address defense counsel's motion to withdraw so long as his motion for self-representation was pending. At that, defendant withdrew his motion.  The court then denied counsel's motion to withdraw as untimely, but it ordered that defendant be evaluated for psychiatric

---

[2] We note that this claim appears to be moot.  The *Faretta* motion was made by defendant prior to the 2011 trial, which was suspended and never resumed.  Defendant was not convicted until after the 2012 trial, which was conducted de novo.  Defendant did not renew the motion to represent himself prior to the 2012 trial, although nothing in the trial court's 2011 ruling would have precluded the granting of such a request.  Given the intervening 2012 trial, the denial of defendant's motion in 2011 had no causal connection to his conviction, and it is by no means clear defendant would be entitled to any practical relief if we found the motion to have been wrongly denied in 2011.  Because the Attorney General has not raised the issue of mootness, we do not address it further.

medication. As a practical matter, defendant gained the relief he was seeking in what he had characterized as a *Faretta* motion.[3]

Three weeks later, at a hearing on August 25, defendant presented the court with a second motion to represent himself. By the time the motion was heard, the case had already been assigned for trial. The court pointed out that, at the time, defendant had not withdrawn his plea of not guilty by reason of insanity and asked whether defendant would prefer to defer his motion until after the previously ordered psychiatric evaluation, which was scheduled for the following day. The court believed the possible administration of medication as a result of that evaluation would assist defendant in controlling his disruptive behavior. Defendant insisted on proceeding immediately. A lengthy discussion ensued, during which the court reviewed with defendant, among many other topics, his various legal rights and confirmed his willingness to waive the assistance of counsel. When the court asked whether defendant was ready to proceed to trial, defendant equivocated, telling the court, "As soon as I can get my discovery, yes," apparently referring to boxes of legal documents in the possession of the sheriff's office. When the court attempted to clarify defendant's readiness, he responded only, "Yes, as soon as I get the tools. I need the discovery. I don't even have my information, your honor."

In ruling, the court noted defendant had withdrawn his *Faretta* request earlier that month and had represented himself earlier in the same proceeding, before requesting counsel. The court also noted defendant had declined to withdraw his insanity plea and had engaged in disruptive behavior during a hearing earlier in the week. The court then denied the motion, explaining: "It appears to be too late. The defendant appears to want

---

[3] Defendant later claimed he was "tricked" into withdrawing his *Faretta* motion, but the hearing transcript refutes the claim. Yet even if defendant had not withdrawn his *Faretta* motion, the trial court would have been justified in denying it as "equivocal" under *People v. Marshall* (1997) 15 Cal.4th 1, 20 (*Marshall*), since defendant's clear preference was to obtain medication and continue with representation by counsel, rather than to represent himself.

to be taking such an inconsistent issue concerning his mental state, that it would create a unique situation that is very problematic. I don't know the law on that, but I do know that the law on the idea that the conduct he has shown me, arguably, contemptuous, is something I have every right to consider. [¶] The history of the case which suggests repeated stalling tactics, do exist in this case, they are there. Any one of these things would justify to deny, I have all of them."

On September 13, during pretrial motions, defendant renewed his request, asserting he would not seek a continuance. The motion was similarly denied.

In *Faretta*, the Supreme Court held, "forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so." (*Faretta, supra,* 422 U.S. at p. 817.) Accordingly, "Once a defendant proffers a timely motion to represent himself, the trial court must proceed to determine whether 'he voluntarily and intelligently elects to do so . . . . If these conditions are satisfied, the trial court must permit an accused to represent himself without regard to the apparent lack of wisdom of such a choice and even though the accused may conduct his own defense ultimately to his own detriment.' " (*People v. Joseph* (1983) 34 Cal.3d 936, 943.)

On appeal of a ruling under *Faretta*, we must review the entire record de novo to determine whether the invocation of the right of self-representation satisfied the decision's requirements, even where the trial court has failed to conduct a full and complete inquiry. (*Marshall, supra*, 15 Cal.4th at p. 24.) If the trial court's stated reason for denying a *Faretta* motion is found to be improper, the ruling still will be upheld if the record as a whole establishes the motion could have been denied on an alternative ground. (*People v. Dent* (2003) 30 Cal.4th 213, 218.) If erroneous, however, the denial of a proper *Faretta* request is reversible per se. (*People v. Boyce* (2014) 59 Cal.4th 672, 702.)

Despite the mandatory language in *Faretta*, the right of self-representation is not absolute. "[A] *Faretta* motion may be denied if the defendant is not competent to represent himself [citation], is disruptive in the courtroom or engages in misconduct outside the courtroom that 'seriously threatens the core integrity of the trial' [citations],

or the motion is made for purpose of delay." (*People v. Lynch* (2010) 50 Cal.4th 693, 721–722, disapproved on other grounds in *People v. McKinnon* (2011) 52 Cal.4th 610, 637.)  Further, if a *Faretta* motion is not made "within a reasonable time prior to the commencement of trial," its allowance is subject to the discretion of the trial court. (*People v. Windham* (1977) 19 Cal.3d 121, 128, fn. omitted.)  "Among other factors to be considered by the court in assessing such [untimely] requests . . . are the quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion."  (*Ibid.*; see *People v. Valdez* (2004) 32 Cal.4th 73, 102–103 [quoting and applying *Windham* factors].)  Although timeliness must be judged from the totality of the circumstances (*Lynch*, at p. 726), the Supreme Court has consistently held that a motion made after a case has been called for trial, like defendant's, is subject to the trial court's discretion.  (See, e.g., *Valdez*, at p. 102; *People v. Horton* (1995) 11 Cal.4th 1068, 1110; *People v. Clark* (1992) 3 Cal.4th 41, 98–99, overruled on other grounds as recognized in *People v. Edwards* (2013) 57 Cal.4th 658, 705; *People v. Burton* (1989) 48 Cal.3d 843, 853.)

We find no abuse of discretion in the trial court's denial of defendant's untimely *Faretta* motion.  As the trial court noted, defendant had a history of seeking self-representation and withdrawing the request.  At the time of the motion in 2011, defendant's trial had been long delayed, in part because of defendant's actions.  For a year, he had been hospitalized for the treatment of a mental disorder that, his treating psychiatrists later concluded, was at least partially feigned.  The trial court justifiably suspected defendant's *Faretta* request was made to create further delay.  Supporting the suspicion was defendant's refusal to declare his unconditional readiness for trial.  His claim he could not proceed until he received his "discovery," a reference he declined to clarify, created an opening for delay, thwarting the planned immediate commencement of

9

trial.[4]  Further, as the trial court also noted, defendant's conduct in hearings immediately prior to the *Faretta* hearing had been disruptive, raising the concern about his conduct as counsel.  That concern was subsequently confirmed by defendant's disruptive conduct at trial, which caused him to be muzzled and shackled.  Finally, defendant's refusal to withdraw his plea of not guilty by reason of insanity was cause for some concern, since a defendant may be competent to stand trial yet not competent to represent himself or herself at trial.  (*People v. Johnson* (2012) 53 Cal.4th 519, 527.)  For all these reasons, the trial court acted well within its discretion in denying defendant's eve-of-trial *Faretta* motion.

Defendant argues his motion was timely because it was originally submitted in June.  As discussed above, however, the June motion was heard on August 5, at which time it was withdrawn by defendant.  Defendant did not renew his motion until his case had been called for trial.

## C. *Defendant's* **Marsden** *Motions*

Defendant contends the trial court erred in denying his many motions for substitution of appointed counsel pursuant to *Marsden* made prior to and during the 2012 trial.[5]  In making the argument, defendant does not discuss the contents of any particular motion, much less demonstrate error in connection with any particular ruling.  Instead, he argues the accumulation of motions demonstrated a breakdown in communication between client and attorney that required substitution of counsel.

---

[4] While defendant's later renewal of the motion promised he would not seek a continuance of trial, the trial court was not required to accept the commitment at face value.  In any event, the other concerns cited above applied as well to the September 13 renewal of defendant's request.

[5] Defendant also contends the trial court erred in refusing to grant motions by defense counsel for relief from the representation, but defendant makes no attempt to demonstrate he has standing to raise the issue of error by the trial court in refusing to grant requests made by his attorney.  In light of this failure, we conclude defendant raises these motions as evidence of the nature of the relationship between defendant and counsel, rather than as an independent ground for judicial relief.

10

Defendant had requested appointment of his trial counsel, William Du Bois, by name when, in 2010, defendant chose to stop representing himself and moved for appointment of counsel. Du Bois continued to represent defendant through the suspended 2011 trial and the subsequent competency trial, but he was relieved following the declaration of a mistrial in that proceeding. Du Bois was reappointed after defendant was declared competent and criminal proceedings resumed after May 2012. Once prior to and repeatedly during trial, defendant made *Marsden* motions for substitution of new appointed counsel for Du Bois.[6] We describe them briefly.

*July 20, 2012*: Although acknowledging Du Bois was "a great attorney," defendant sought new counsel because Du Bois had not obtained a psychiatric evaluation of defendant prior to the September 2011 trial. In addition, defendant believed Du Bois, during the competency trial, had called as a witness a defense expert who had performed a "private evaluation" and improperly allowed a mistrial to be declared. The trial court denied the *Marsden* request, noting defendant had mischaracterized the events and finding, "Your counsel has been incredibly competent."

*October 10, 2012*: During the trial, defendant contended he was not "getting a vigorous defense" because he did not have access to all his trial records in jail and witnesses he wanted to have called at trial were unavailable. Defendant was also concerned because Du Bois believed he was mentally ill and claimed Du Bois had revealed matters defendant had told him in confidence. Defense counsel denied having made any improper revelations. He explained he and defendant had "tactical disagreements" because defendant insisted on a "nit-picky" approach to the evidence. The trial court concluded defendant was taking inconsistent positions, leaving defense counsel "damned if he does and damned if he doesn't." Based on its own observations of

---

[6] In light of the suspension of proceedings in 2011 and Du Bois's subsequent removal in favor of a new attorney, the issue of the propriety of the rulings on any *Marsden* motions made prior to the resumption of criminal proceedings in 2012 is moot, and we do not discuss these motions. Defendant has, in any event, waived error in connection with these motions by failing to address them with specificity in his opening brief.

11

counsel's performance at trial, the court denied the *Marsden* motion, concluding defendant did not understand defense counsel's tactics, which were based on a "better idea of the big picture" than defendant possessed. As the trial court noted: "There is a reality here that is all over the records, I don't think anybody could miss it, but you don't get along with any lawyers. . . . [¶] . . . [¶] . . . I gave you a second lawyer on whether or not you were competent, and it took you less than a week to start asking for Mr. Du Bois back. [¶] Now, the reality is, we could go through the entire Alameda County bar, I don't know if you would always be asking specifically for Mr. Du Bois back, but you would want to get rid of all of them."

*October 23, 2012*: Defendant contended Du Bois failed to locate or call several favorable witnesses, including witnesses who gave descriptions of the bank robber that did not match him. The trial court noted defense counsel had introduced evidence of the nonmatching descriptions through police reports and explained that calling the witnesses to testify risked the possibility they would recant those descriptions on the stand. The court concluded the testimony of the remaining witnesses was of little probative value. Du Bois acknowledged he failed to investigate the records of a particular hotel where defendant falsely claimed to have been working at the time of one robbery, but counsel explained defendant had not raised the issue with him prior to testifying. The trial court concluded Du Bois could not be held responsible for failing to warn defendant about the potential for impeachment of his false testimony when defendant had not told Du Bois in advance about the testimony. Defendant also faulted counsel for not challenging the prosecution's DNA evidence, but counsel explained there was no reason to doubt the DNA evidence, and investigating the work independently and confirming its accuracy would have strengthened the prosecution's position. As counsel explained: "It underlines the problem in favor of the Prosecution rather than derogates from it. . . . [I]f I thought there was the slightest problem, having reviewed [the prosecution's analysis], I would have had it reanalyzed." For the reasons discussed, the trial court rejected defendant's claims in denying the *Marsden* motion.

12

*October 24, 2012*:  The next day, defendant filed a *Marsden* motion on the ground the trial court had referred to him as a liar in ruling on the prior day's *Marsden* motion. The trial court concluded defendant's points were the same ones rejected the prior day in connection with investigation and denied the motion.

*October 30, 2012*:  During jury deliberations, defendant made a final *Marsden* motion, contending he had been the victim of "gross ineffectiveness."  Defendant again contended Du Bois had failed adequately to investigate his case and contact favorable witnesses known to defendant.  Defense counsel rebutted defendant's claims, noting defendant's inconsistencies in his account of the events had made it impossible to satisfy all his demands.  Du Bois explained at length that the defense had pursued the many witnesses suggested by defendant and found their potential testimony unhelpful, contrary to defendant's expectations.  In denying the motion, the trial court found defendant was unable to specify any particular witnesses who had not been contacted and judged his claims to be inconsistent and repetitive.

The need for a *Marsden* hearing arises "[w]hen a defendant seeks to discharge his appointed counsel and substitute another attorney, and asserts inadequate representation." (*People v. Richardson* (2009) 171 Cal.App.4th 479, 484.)  When an appropriate request is made, " ' "the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of [the attorney's] inadequate performance." ' "  (*People v. Streeter* (2012) 54 Cal.4th 205, 230.)  " ' "A defendant is entitled to relief if the record clearly shows that the appointed counsel is not providing adequate representation or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result." ' [Citation.]  'A trial court should grant a defendant's *Marsden* motion only when the defendant has made "a substantial showing that failure to order substitution is likely to result in constitutionally inadequate representation." ' [Citation.] [¶] 'We review the denial of a *Marsden* motion for abuse of discretion.' [Citation.]  'Denial is not an abuse of discretion "unless the defendant has shown that a failure to replace counsel would substantially impair the defendant's right to assistance of counsel." ' "  (*Ibid.*)

Claiming an "irreconcilable conflict," defendant contends the quantity of his *Marsden* motions, combined with counsel's earlier requests for relief from the representation, demonstrate he and Du Bois had a "breakdown in the attorney-client relationship." While the sheer number of *Marsden* motions illustrates defendant's level of frustration with the progress of his trial, it proves little about the nature of the relationship between defendant and Du Bois. As the transcripts of the several hearings demonstrate, counsel attempted to work with defendant, within the constraints permitted by defendant's erratic behavior, to provide the best available defense. In the face of a very difficult task, Du Bois appears, for the most part, to have maintained a remarkably reasoned perspective and a professional approach. Defendant, in turn, expressed admiration for counsel's skills and performance, inconsistently combined with his repeated criticisms. His frustration arose not from any personal conflict with counsel but from counsel's inability to meet his demands—demands that, the trial court found, were impossible to meet because they were erratic, inconsistent, and based on wishful thinking or outright invention. As the trial court also found, providing new counsel to defendant would not have resulted in an improved attorney-client relationship because defendant projected his frustration with his predicament onto any counsel appointed, leading to the identical dissatisfaction.

In short, while there was plainly a strained relationship between defendant and Du Bois, it was not the type of conflict that risked causing ineffective assistance of counsel. It was defendant's uncooperative and self-defeating conduct, rather than anything inherent in the relationship between defendant and Du Bois, that created a risk of error at trial, if such a risk existed. This conduct would have made the task of representation equally difficult for any attorney assigned to replace Du Bois. As a result, the trial court did not abuse its discretion in declining to replace Du Bois, despite their difficult relationship.

**D.** *Ineffective Assistance of Counsel*

Defendant contends he was denied effective assistance of counsel because, faced with a difficult client, his attorney "simply gave up," failing to investigate potential witnesses and challenge evidence.

" ' "In assessing claims of ineffective assistance of trial counsel, we consider whether counsel's representation fell below an objective standard of reasonableness under prevailing professional norms and whether the defendant suffered prejudice to a reasonable probability, that is, a probability sufficient to undermine confidence in the outcome. [Citations.] A reviewing court will indulge in a presumption that counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy. Defendant thus bears the burden of establishing constitutionally inadequate assistance of counsel." ' " (*People v. Brown* (2014) 59 Cal.4th 86, 109.)

There is no support in the record for defendant's claim of surrender by his attorney. On the contrary, as discussed above, the record reflects an attorney who struggled doggedly to overcome the obstacles created by an erratic and uncooperative client, providing defendant with an appropriate and professional defense.

Defendant's claim of ineffective assistance is based in part on the incident, described above, in which defense counsel failed to anticipate defendant would falsely claim while testifying that at the time of one of the robberies he had been working at a local hotel. The testimony left him open to impeachment by hotel management regarding the activities at the hotel that day, and counsel criticized himself for not investigating the hotel and warning defendant about the possibility of impeachment. As the trial court pointed out, however, counsel could hardly be faulted for not anticipating defendant's invention. Defendant also raises counsel's alleged failure to attack DNA evidence presented, addressed in the same *Marsden* hearing. As pointed out at the time, defense counsel investigated the DNA evidence and concluded as a matter of tactics that attacking it would be counterproductive. Defendant also contends Du Bois failed to cross-examination certain prosecution witnesses, but the record shows as a matter of

15

tactics Du Bois chose to waive their cross-examination and call the same witnesses back as part of the defense case. Defendant's other examples of alleged ineffective assistance are similarly without substance.

As further evidence of ineffective assistance, defendant cites examples of sarcasm by counsel in discussing defendant with the court during the confidential *Marsden* sessions. These remarks, an expression of counsel's frustration with his difficult client, demonstrate only that counsel was human, not that his representation was in any way deficient. Because the remarks were outside the presence of the jury and prosecution, they had no effect on the trial.

Defendant makes no attempt to demonstrate prejudice from counsel's purported ineffective assistance, arguing counsel's failure was so great as to require no such demonstration. The sole case cited as support, *Davis v. Alaska* (1974) 415 U.S. 308, bears no resemblance to the case at hand. (See *id.* at pp. 313–314 [defendant denied right of confrontation when defense counsel prohibited from cross-examining critical defense witness about juvenile adjudication, thereby preventing challenge of patent falsehoods].) Defendant also contends he was excused from showing prejudice because he was denied counsel entirely (see *Strickland v. Washington* (1984) 466 U.S. 668, 692), but that was manifestly not the case. Du Bois was present and participating throughout the trial.

## III. DISPOSITION

The judgment of the trial court is affirmed.

 

_____
Margulies, J.

We concur:


_____
Humes, P.J.


_____
Banke, J.