[No. B137310. Second Dist., Div. Five. Feb. 8, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
KENNETH WAYNE CARLISLE, Defendant and Appellant.

## COUNSEL

Sharon L. Rhodes, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Jamie L. Fuster and Ana R. Duarte, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**TURNER, P. J.—**

### I. INTRODUCTION

Defendant, Kenneth Wayne Carlisle, appeals from his convictions for second degree robbery (Pen. Code,[1] § 211), misdemeanor assault on a peace officer (§ 241, subd. (b)), and felony evading. (Veh. Code, § 2800.2, subd. (a).) He was also found to have: personally used a firearm in the commission of the robbery (§ 12022.53, subd. (b)); previously been convicted of two serious felonies (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)); and served a prior prison term. (§ 667.5, subd. (a).) Defendant argues that the trial court improperly: denied his right to represent himself; admitted evidence of a prior felony conviction; and imposed a five-year enhancement for his prior prison term. The Attorney General argues that the trial court improperly granted presentence conduct credits pursuant to section 4019. We conclude Judge Michael S. Luros improperly denied defendant's repeated self-representation requests and reverse the judgment under the compulsion of *Faretta v. California* (1975) 422 U.S. 806, 835 [95 S.Ct. 2525, 2541, 45 L.Ed.2d 562].

### II. FACTUAL BACKGROUND

■ We view the evidence in a light most favorable to the judgment. (*Jackson v. Virginia* (1979) 443 U.S. 307, 319 [99 S.Ct. 2781, 2789, 61 L.Ed.2d 560]; *People v. Osband* (1996) 13 Cal.4th 622, 690 [55 Cal.Rptr.2d 26, 919 P.2d 640]; *Taylor v. Stainer* (9th Cir. 1994) 31 F.3d 907, 908-909.) Defendant robbed the clerk in the market of a gasoline station at gunpoint. Defendant took $192. Several video cameras captured defendant's image during the robbery. Defendant's automobile was seen by Los Angeles County Deputy Sheriff Robert Heins shortly after the robbery occurred. Deputy Heins followed defendant's car onto the Antelope Valley Freeway. Other law enforcement units joined the pursuit. Defendant drove on the wrong side of the road. He caused several other cars to swerve to avoid a collision. Deputy Heins drove in front of defendant's car. Defendant rammed Deputy Heins's patrol car. Deputy Heins got out of the car. Defendant then rammed the patrol car again. Deputy Heins was hit by the patrol car's door. Defendant was ordered out of the car. A female passenger and a dog were also inside defendant's car. Two loaded guns were found in defendant's car. A purse containing $192 was also found in defendant's car. Defendant was

---

[1]All further statutory references are to the Penal Code unless otherwise indicated.

identified by the store clerk as the man who had robbed her. She also identified defendant's car as the one she had seen him driving. When interviewed a few hours after his arrest, defendant admitted that he committed the robbery. There was no evidence of innocence.

## III. DISCUSSION

■ Defendant argues that the trial court improperly denied his timely and unequivocal motions to represent himself, thereby violating his federal constitutional self-representation right. (*Faretta v. California, supra,* 422 U.S. at p. 835 [95 S.Ct. at p. 2541]; *People v. Welch* (1999) 20 Cal.4th 701, 729 [85 Cal.Rptr.2d 203, 976 P.2d 754]; *People v. Marshall* (1997) 15 Cal.4th 1, 20 [61 Cal.Rptr.2d 84, 931 P.2d 262]; *People v. Marshall* (1996) 13 Cal.4th 799, 827 [55 Cal.Rptr.2d 347, 919 P.2d 1280]; *People v. Clark* (1992) 3 Cal.4th 41, 98 [10 Cal.Rptr.2d 554, 833 P.2d 561]; *People v. Burton* (1989) 48 Cal.3d 843, 852 [258 Cal.Rptr. 184, 771 P.2d 1270].) However, a defendant's request for self-representation must be a knowing, voluntary, and unequivocal assertion of that right. (*Faretta v. California, supra,* 422 U.S. at pp. 835-836 [95 S.Ct. at pp. 2541-2542]; *People v. Bradford* (1997) 15 Cal.4th 1229, 1365 [65 Cal.Rptr.2d 145, 939 P.2d 259]; *People v. Marshall, supra,* 15 Cal.4th at pp. 20-21; see also *People v. Barnett* (1998) 17 Cal.4th 1044, 1087 [74 Cal.Rptr.2d 121, 954 P.2d 384] [defendant's single request to proceed pro se was an impulsive response to the magistrate's refusal to immediately consider a substitution of counsel].)

Defendant made several motions to represent himself prior to trial. Beginning with the preliminary hearing on May 11, 1999, defendant requested to represent himself. However, defendant subsequently acceded to counsel's representation for purposes of the preliminary hearing. After the preliminary examination, defendant's case was originally assigned to the courtroom of Judge Michael S. Luros. On May 24, 1999, a hearing pursuant to *People v. Marsden* (1970) 2 Cal.3d 118, 123-126 [84 Cal.Rptr. 156, 465 P.2d 44], was conducted. Defendant was represented by Deputy Public Defender Mitchell Bruckner. Defendant's motion to have Mr. Bruckner replaced by another lawyer was denied. Thereafter, defendant indicated that he would like to represent himself. Judge Luros admonished defendant of the risks related to self-representation. Defendant indicated that he desired to represent himself if he could not get a different lawyer appointed to provide representation. Judge Luros then denied the motion, finding "no unequivocal waiver" of the right to counsel. Judge Luros gave defendant the waiver forms to complete. Defendant completed the waiver forms. The waiver form entitled "PETITION TO PROCEED IN PROPRIA PERSONA" required defendant to initial the document in 23 places and sign it under penalty of perjury, which he did. Judge Luros

questioned defendant's request. Defendant responded: "I have considered it. I have considered it for three weeks. [¶] . . . [¶] But I don't want to go pro per unless I don't have an alternative." When informed he did not have an alternative, defendant responded: "Then I am going to have to go pro per then, period. [¶] I don't want Mr. Bruckner." The trial court then found: "I believe what I have heard thus far has been extremely equivocal. I am going to trial this one day to consider defendant's motion . . . ."

The next day, May 25, 1999, the trial court indicated its belief that defendant had made an impulsive reaction to its May 24, 1999, denial of his *Marsden* motion. Mr. Bruckner stated: "I am his lawyer of record if he's going to get appointed counsel. That being the case, when faced with the decision, with the option of either having me represent him or having him represent himself in pro per, he would like to [go] pro per. [¶] I want to be on the record. I have told Mr. Carlisle, as the court did, that I don't think that's in his best interest. I encouraged Mr. Carlisle to have me represent him. Mr. Carlisle still persists in his desire to represent himself in pro per. [¶] And any other characterization that the court wants to put on his position is frankly not the case." At one point, Mr. Bruckner stated: "The fact of the matter is that Mr. Carlisle's request for pro per status is not impulsive. It's been his position to go pro per since his first appearance in Municipal Court in this matter. He was before the court yesterday for his arraignment where he reiterated that at the very first time he appeared before this court. This is not impulsive. This has been his request from the get-go. This is not an emotional reaction of any kind. This has been his consistent demand and request of the court, and, once again, there's nothing equivocal about his desire. The Marsden motion being denied, he is faced with a decision of having to either [represent] himself or me represent him. He's quite un-equivocally stating before this court that given that option he wants to represent himself." Later, Mr. Bruckner stated: "And there is nothing equivocal about what he is saying, no matter how much this court wants to muddy up what his position is in court. His position right now is quite unequivocal, that he wants to represent himself, period." Later, defendant said, "I wish to represent myself if I can't have some appointment of a different counsel other than yourself, yes, I want to represent myself." Defendant's motion was denied as equivocal by Judge Luros.

Defendant renewed his motion to proceed in pro se at the next court appearance 10 days later on June 4, 1999, before Judge Luros. Defendant informed Judge Luros, "If I can't have another attorney or him, if I'm stuck with him, then I would rather represent myself pro per." Judge Luros denied the motion.

Defendant made another motion to represent himself on June 21, 1999. This was the third motion to proceed in pro se before Judge Luros. The trial

court denied the self-representation motion. Mr. Bruckner stated: "Well, for starters, I don't know if I need to continue to belabor this point, but Mr. Carlisle [continues] to be desirous of representing himself. Mr. Carlisle basically is in a position where he can either have me represent him as his appointed counsel or represent himself. Given the two options, he would renew his motion to represent himself pro per." Judge Luros denied defendant's request to proceed in pro se.

On July 9, 1999, Mr. Bruckner reiterated defendant's self-representation request. Again, these proceedings were conducted before Judge Luros. After an objection was interposed to a continuance by Mr. Bruckner, defendant's deputy public defender, the following ensued: "MR. BRUCKNER: And I would just assert that in addition to what I think is already possible error in this matter in terms of denying Mr. Carlisle a pro per position, I would assert— [¶] THE COURT: Well, if he wants to—what was the basis of which I denied his—unequivocal—no unequivocal waiver of his right to counsel. [¶] MR. BRUCKNER: Right. [¶] Mr. Carlisle has repeatedly asserted that he would like counsel appointed if it could be someone other than myself. But if his choice is either myself—if his choice is either myself to represent him or himself, his option is to represent himself." The motion was denied as being equivocal.

On August 5, 1999, the issue of defendant's request to proceed in pro se was raised once again. The trial court indicated that there had been no unequivocal waiver of the right to counsel. Mr. Bruckner then said: "The bottom line here is that, to state the issue concisely, is that Mr. Carlisle has basically at this point two options: He can have me represent him, or he can represent himself. He does not have the funds to retain private counsel. [¶] Faced with those two options, it's Mr. Carlisle's consistent, quite definite, and— [¶] . . . [¶] —unequivocally, given those options, he wants to represent himself." The trial court then conducted another hearing pursuant to *People v. Marsden, supra,* 2 Cal.3d at pages 123-126.

After the conclusion of the hearing on August 5, 1999, at which defendant presented complaints concerning Mr. Bruckner, the pro se issue was discussed again. Mr. Bruckner indicated that for nearly two months defendant had wished to proceed in pro se and such a desire was not out of a sense of pique or frustration. Again, Mr. Bruckner stated, "He doesn't want me to be his lawyer, and given a choice between me and himself, he has very clearly, unequivocally, logically and calmly made a decision that given those two options he wishes to represent himself." At this point, the deputy district attorney, Christopher Estes, stated, "Your honor, I would indicate for the record, too, that when Mr. Bruckner was making his statement, at the portion

of his statement where he was saying Mr. Carlisle does want to represent himself, Mr. Carlisle was nodding in the affirmative." After Judge Luros found defendant had not unequivocally waived the right to counsel the deputy district attorney, Mr. Estes, said: "[J]ust for the record, your honor, what I heard the defendant say at the beginning of this hearing and before the *Marsden*, he was in the process of telling the court that he does want to represent himself— [¶] . . . [¶] —and his reasoning can be for—can be based on the number of things. [¶] But he was indicating to the court that he wanted to represent himself, and the court cut him off and made the finding that you have made. [¶] But I want the court to be real clear on this because I agree with Mr. Bruckner, that this is a right that defendants like Mr. Carlisle do have." Judge Luros then once again denied the motion because there had been no unequivocal waiver of the right to counsel by defendant. Mr. Estes reiterated, "He can make the decision to go pro per for whatever reason he wants, and— [¶] —and if he doesn't want this lawyer and he would rather go pro per, I think he's entitled to do that." Judge Luros responded: "No, he's not. [¶] There is no unequivocal waiver of the right to counsel."

On September 9, 1999, the pro se request was litigated once again before Judge Luros. Mr. Bruckner reiterated defendant's request to proceed in pro se. The following transpired: "THE COURT: Okay. Well, I'm going to have to ask you the same questions I asked you before. [¶] Is it your intent to give up the right to be represented by an attorney for all purposes? [¶] THE DEFENDANT: No, it is not. [¶] THE COURT: Pardon? [¶] THE DEFENDANT: No, it is not. I would like an attorney, anyone but Mr. Bruckner. But in lieu of that, I want a represent myself. [¶] THE COURT: No. I'm afraid there's not a waiver of the right to counsel." Later, defendant stated: "Okay. For the record, I would like to unequivocally represent myself without an attorney. I waive that right. Seeing the position [of] the court—since the court will not give me an attorney, has not given me a different attorney, did not seem to be inclined give me another attorney, my only alternative is to go pro per." Judge Luros responded: "No. That is not unequivocal waiver of a right to counsel. Because by saying what you said, because [the] court will not give you an attorney; will not give you a different attorney, that's the same thing. A rose is a rose is a rose. It may not smell as sweet, but it is. It is nonetheless a rose, and you're not saying—by saying what you said, it is not an unequivocal waiver of right of counsel, but reserved." Later, defendant stated, "I don't want any attorney at all." Judge Luros interjected, "For—and it's not because any other reason except that you do not want an attorney; isn't that correct?" The deputy district attorney, David Evans, said: "Your honor, I'm not sure that the law requires the court to determine the defendant's motive for wanting to go pro per. [¶] . . . [¶] What he's saying is that

he wants to go pro per because he does not want to be represented by the only attorney who is available to him. He has the right—in my mind he has the right to say that—what he is saying is given the circumstance he does not want an attorney; he wants to represent himself." Judge Luros responded: "No. I'm not going to let him ride both horses." After a brief colloquy, defendant said: "Okay. I don't want to be represented by an attorney."

The Attorney General relies on a body of constitutional law that holds that the accused does not unequivocally request self-representation when he or she acts out of "temporary whim, or out of annoyance or frustration . . . ." (*People v. Marshall, supra,* 15 Cal.4th at p. 21.) The California Supreme Court in *Marshall* summarized the pertinent body of law relied upon by the Attorney General as follows: "Several lower courts have declared that a motion made out of a temporary whim, or out of annoyance or frustration, is not unequivocal—even if the defendant has said he or she seeks self-representation. (*Reese v. Nix* (8th Cir. 1991) 942 F.2d 1276, 1281 [the defendant stated 'well I don't want no counsel then,' but this was deemed a mere impulsive response to the trial court's denial of a request for new counsel]; *Jackson v. Ylst* (9th Cir. 1990) 921 F.2d 882, 888-889; *Hodge v. Henderson* (S.D.N.Y. 1990) 761 F.Supp. 993, 1001-1002; *People v. Hacker* (1990) 167 App.Div.2d 729 [563 N.Y.S.2d 300, 301]; *Reese v. State* (Iowa Ct.App. 1986) 391 N.W.2d 719, 724.) As one court expressed it, a court 'properly may deny a request for self-representation that is a "momentary caprice or the result of thinking out loud." ' (*Jackson v. Ylst, supra,* 921 F.2d at p. 888.) In *People v. Hacker, supra,* 563 N.Y.S.2d 300, for example, in response to defendant's request, the trial court inquired whether the defendant was certain he wanted to proceed pro se, and he responded affirmatively. The reviewing court nonetheless found the record as a whole did not reflect an unequivocal request, but rather a spur of the moment decision prompted by the denial of defendant's motion for substitute counsel. (563 N.Y.S.2d at p. 301.) And in *Jackson v. Ylst, supra,* 921 F.2d 882, 889, the defendant stated: ' "I want to fight it in pro per then. Relieve him and I do this myself." ' The reviewing court considered the record as a whole, including the defendant's failure to assert the right of self-representation at a later hearing, and independently determined that the defendant's request for self-representation was an impulsive response to the trial court's denial of his request for substitute counsel. Examining the question whether the defendant in fact wanted to represent himself, the court stated: 'Jackson's emotional response when disappointed by the trial court's denial of his motion for substitute counsel did not demonstrate to a reasonable certainty that he in fact wished to represent himself.' (*Ibid.,* italics omitted.)" (*People v. Marshall, supra,* 15 Cal.4th at pp. 21-22.)

We respectfully disagree with the analysis of the Attorney General that *Marshall,* and the cases cited therein, require affirmance. Certainly, Judge

Luros acted consistent with established federal constitutional law on May 24, 1999, when defendant made the first self-representation request after the preliminary examination. On May 24, 1999, defendant was upset at the assignment of Mr. Bruckner to act as counsel. Defendant remained angry after the hearing conducted pursuant to *People v. Marsden, supra,* 2 Cal.3d at pages 123-126, when Judge Luros refused to appoint an attorney other than Mr. Bruckner. As to the events of May 24, 1999, *Marshall* and the decisions cited therein are the controlling authority.

However, the record as a whole when examined after May 24, 1999, demonstrates that at some point defendant's self-representation request should have been granted. On May 24, 1999, defendant had filled out a written petition to proceed in propria persona which required he initial the document in 23 places and sign it under penalty of perjury. The next day, on May 25, 1999, Mr. Bruckner stated, "His position right now is quite un-equivocal, that he wants to represent himself, period." Later, on June 4, June 21, July 9, August 5, and September 9, 1999, either defendant or Mr. Bruckner reiterated the self-representation request. Two separate deputy district attorneys indicated to Judge Luros the defendant had a self-represen-tation right even if it was based on the erroneous belief that Mr. Bruckner should not be appointed to act as counsel. We cannot equate defendant's nearly four-month long repeated requests to proceed in pro se to be a litigation decision resulting from "temporary whim, or out of annoyance or frustration . . . ." (*People v. Marshall, supra,* 15 Cal.4th at p. 21.) Nor can we equate defendant's four-month-long self-representation quest to be one made "in passing anger or frustration . . . ." (*Id.* at p. 23.) Hence, *Marshall* does not permit us to affirm the judgment. Judge Luros's failure to allow defendant to proceed pro se was reversible error. (*Faretta v. California, supra,* 422 U.S. at pp. 835-836 [95 S.Ct. at pp. 2541-2542]; *People v. Bradford, supra,* 15 Cal.4th at p. 1365; *People v. Marshall, supra,* 15 Cal.4th at pp. 20-21; *People v. Joseph* (1983) 34 Cal.3d 936, 945 [196 Cal.Rptr. 339, 671 P.2d 843]; *People v. Ruiz* (1983) 142 Cal.App.3d 780, 788 [191 Cal.Rptr. 249] ["the erroneous denial of a timely *Faretta* motion is per se reversible"].) We therefore reverse the judgment and remand for a retrial.

We do note that Judge Tricia Ann Bigelow, who actually tried the case, did not commit any error in denying defendant's day of trial pro se request made on October 12, 1999. It was untimely as a matter of federal constitu-tional law. (*Moore v. Calderon* (9th Cir. 1997) 108 F.3d 261, 264-265; *People v. Marshall, supra,* 13 Cal.4th at p. 827; *People v. Burton, supra,* 48 Cal.3d at p. 852; *People v. Rudd* (1998) 63 Cal.App.4th 620, 626-627 [73 Cal.Rptr.2d 807].) Because we reverse on this issue alone, we need not address the remaining issues of the propriety of the proof of prior foreign

convictions, the imposition of a five-year enhancement pursuant to section 667.5, subdivision (a), and the award of presentence credits pursuant to section 4019. Further, it may be that defendant, who was subject to a parole hold, was not entitled to an award of any presentence credits. (*People v. Bruner* (1995) 9 Cal.4th 1178, 1183-1194 [40 Cal.Rptr.2d 534, 892 P.2d 1277]; *In re Joyner* (1989) 48 Cal.3d 487, 491-495 [256 Cal.Rptr. 785, 769 P.2d 967].) On retrial, we leave these issues in Judge Bigelow's good hands.

### DISPOSITION

The judgment is reversed.

Grignon, J., and Godoy Perez, J., concurred.