Filed 6/30/15  P. v. Long CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>CHARLES RUSSELL LONG,<br><br>        Defendant and Appellant. | D066968<br><br><br>(Super. Ct. No. RIF1208859) |


APPEAL from a judgment of the Superior Court of Riverside County, Thomas Kelly, Judge.  Reversed in part and affirmed in part with directions.


Jennifer Peabody, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Alana C. Butler, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

A jury found Charles Russell Long guilty of committing a forcible lewd act on a minor (Pen. Code, § 288, subd. (b)(1); count 1),[1] attempting a lewd act on a minor (§§ 288, subd. (a), 664; count 2), showing harmful material to a minor (§ 288.2, subd. (a); counts 3 & 4), contacting a minor with the intent to commit a lewd act (§ 288.3, subd. (a); counts 5 & 6), possessing child pornography (§ 311.11, subd. (a); counts 7-9), and distributing child pornography (§ 311.1, subd. (a); counts 10 & 11).  Long pled guilty to possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a); count 12).  The court sentenced Long to an aggregate term of 20 years, which included the upper term of four years for count 2 as the principal count, and a consecutive upper term of 10 years for count 1 (§ 667.6, subd. (c)).

On appeal, Long contends:  (1) there was insufficient evidence to support his conviction for committing a forcible lewd act on a minor (count 1); (2) he was wrongly convicted of multiple counts of possession of pornographic images under section 311.11 because they were found in one location even though they were contained on multiple electronic devices; (3) he was denied his constitutional right to self-representation at the sentencing hearing; (4) the court erred in imposing a full consecutive upper term sentence for count 1 without stating reasons for the full consecutive term under section 667.6 separately from those reasons articulated for the upper term; and (5) clerical errors in the abstract of judgment should be corrected.  The People concede the second and fifth

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

contentions. Accordingly, we reverse the convictions for counts 8 and 9 and direct the trial court to amend the abstract of judgment to correct clerical errors. We affirm the judgment in all other respects.

FACTUAL AND PROCEDURAL BACKGROUND

A

When Long moved into a recreational vehicle (RV) park at the end of September 2012 he chose a spot across the street from the pools and adjacent to the public restroom. He said it was a perfect spot because it had everything he needed. Long almost immediately befriended nine-year-old, Jane Doe,[2] who lived with her family in a RV about 40 feet away from Long's RV, on the other side of the public restroom. Long bought Jane candy, a diary, and a makeup kit. He also gave her an iPod to use. Jane's parents made her return the iPod, but Long gave it back to her. Her parents became concerned and instructed Jane not to go into Long's trailer.

Long took Jane to the store to buy candy and to the community pool to swim. Long filmed Jane with an underwater camera while she was swimming. He would place the camera underneath her or throw it under her so she would land on it. It took pictures of her crotch area.

The first day at the pool, Jane became uncomfortable because Long got too close to her. When she scooted back, he moved forward. On another occasion in the pool,

---

[2] The minor's name was redacted in the record and replaced with "Jane Doe" to protect her identity. Therefore we refer to the minor as Jane.

Long tried to jump on Jane and grab her with his arms, but she was able to swim away and get out to go to another pool. He followed her to the other pool and stared at her.

Long showed Jane pictures of a naked nine-year-old girl who he said was his daughter. He also said his daughter was his girlfriend. When Long gave Jane the iPod, he showed her a picture of his penis and suggested she take a picture of her crotch area. He also showed her a video of an adult man having sex with a six-year-old girl.

Several times Long asked Jane to touch him or to have sex with him. Twice while she was showering in the community bathroom adjacent to his RV, he called her name and said, "Do you want to have it with me?" Once, Long followed Jane as she walked to the park and asked if he could videotape them "doing it" and asked if she wanted to have sex with him. Another time, as they walked to the store in the RV park, Long told her she could have anything she wanted if she would have sex with him. When she said "no," he bought her candy anyway. When they were outside the store, however, Long asked, "Do you want to touch my dick?" Jane said "no" and ran to the park.

One day, Long met Jane as she exited the community bathroom and asked her if she wanted some money. When she said yes, he placed the money in his waistband near his belt buckle. He told her he wanted her to take the money. In her initial interview with a social worker, Jane stated Long grabbed her hand and pushed it into his pants before she ran away. Jane also told her parents Long grabbed her hand and put it down his pants. In a second interview with the social worker, Jane did not state Long grabbed her arm, but she did not say he did not do so either. When asked what he said, she reported he said he wanted to push her hand down there. At trial, Jane said she could not

4

remember whether or not he touched her.  On cross-examination, she said he did not grab her hand, but she was afraid he would do so.  Jane also testified this was a disturbing incident, which she tried to forget.

B

After the event with the money, Jane gave her parents a letter describing what Long had been doing.  She also talked with her parents about what happened.  Jane's father immediately went to the RV park's office to call the police.  The following day, Jane was interviewed by a social worker while a detective was in the next room watching the interview.

Long approached Jane's father in a nervous and agitated state, which caused the father to fear for his safety.  Long asked if the family complained about him and also asked if Jane had been looking up inappropriate things on the Internet.  Long asked the father if they could come to some sort of arrangement, but did not explain what he meant.  Long appeared erratic and fidgety.

When a detective went to Long's trailer, he noticed a laptop computer on the countertop with a screensaver consisting entirely of child pornography.  In an interview, Long stated he downloaded child pornography and looks at both child and adult pornography.  He said he likes children dressed in bathing suits. Long also stated, "I like children but I didn't let any of them know."  Long admitted he gave Jane an iPod and took pictures and videos of her swimming in the pool, but said he had her parents' permission.  Long also said he tried to sell images and videos he had made of Jane at the pool.  Regarding the money incident, Long said Jane asked him for money for food at school.

5

He had it in his pocket and told her to grab it. When she did not do so, he said he gave it to her and she left. Long demonstrated by placing his hand in his waistband toward the center of his pants.

A detective with the Riverside County Sheriff's Department analyzed Long's laptop computer, video camera and a camera, iPod and cellular telephone. There were over a thousand pornographic images and videos of children on Long's computer. Long's computer contained a folder entitled "my daughter (Jane)" with several subfolders. The detective described the titles of the subfolders as follows: "At the pool with my daughter friend Brianna; Bri, …, hot pussy shot; the girl from across the street; my daughter (Jane) in the pool; (Jane) 8 y-o, … 'NN' … legal videos; (Jane's) cute, [little] butt, …; first day with camera; her dance; the (Jane) kiss; the many faces of (Jane); tight fat pussy shots; show (Jane) pics and vid; … does she know; is she showing; [and] the sexiest poses from all models." Other folders were entitled: "Jailbait amateurs;" "4 to 12 y-o jailbait"; and "Jen-Jen … ist … [the] … first child I fell for."

The jury was shown a sampling of images from the computer. Among these were: (1) a photo taken between a child's legs, which was labeled "my (Jane) 79" and was located in the folder entitled "tight fat pussy shots"; (2) a photo depicting a child's bottom in a swimming pool, which was labeled "sexy (Jane) in the pool" from the folder entitled " '(Jane) cute little' … 'butt' "; (3) a photo of a girl with a pink bathing suit in the pool, which was labeled "sexy Brianna and (Jane)"; (4) a photo of Long with a bathing suit in his mouth entitled "look at me (Jane) 009" from a folder entitled "Russell pictures me."

6

There were also videos located on the computer, some of which were shown to the jury. These included videos entitled "(Jane's) smoking hot fat pussy up close," "Letting me shoot close-up and is helping," and "The girl with the fine ass 11 yo."

The detective located Facebook chat messages between Long and another individual in which Long stated, "I a pedophile" and "I can get millions of pictures of naked girls her age, and think there are more than a few on this P.C." After a string of messages in which Long described his state of arousal related to viewing pictures, there was a reference to an exchange of money.

There was evidence Long uploaded photos to Yahoo messenger including a photo taken between a female child's legs, a photo of a child's buttocks in a pool, a photo of a nude female backside, a photo of a penis near white underwear, and a photo of a penis on top of a bathing suit. He also uploaded numerous images to a peer-to-peer file sharing network called GigaTribe, including photos of Jane's bottom in the pool and a photo taken between Jane's legs.

The detective also retrieved photos from Long's cellular phone depicting a child's bottom area, including one showing a girl's legs beneath a picnic table. There were photos on his camera of a child performing oral sex on another child as well as a photo of two children performing sexual acts on an adult male.

C

During trial, Kimberly M. testified about her interaction with Long in 1999, when she was 10 or 11 years old and was living in a RV park in another part of California. She was introduced to Long by a neighbor girl, who was nine or 10 years old. The neighbor

7

girl and Kimberly's younger sister said Long was nice. Long would approach Kimberly to greet her when she walked past his trailer on her way home from school. Every time he approached, his penis was exposed through his unzipped pants. He would ask her to come inside his trailer to hang out. He also gave her money. She went inside his trailer about 10 times and they would sit around and talk. She testified he once asked her to "suck his dick." When she tried to leave, he pushed her down onto the couch, but she was able to get away. On another occasion, he grabbed her buttocks when he was walking her out the door.

## D

As part of Long's defense, the parties stipulated that Jane's friend told a social worker she never heard Long say anything bad to Jane, but she was not always around them. She also stated she thought Long was weird and she saw Long give Jane money for candy.

In closing arguments, Long's attorney focused on counts 1 and 2 stating the remaining charges were not in dispute. Long's attorney argued there was reasonable doubt as to whether Long grabbed Jane's hand or if he wanted to grab it, as Jane said at trial.

On May 17, 2013, the jury returned guilty verdicts on all counts with less than two hours of deliberation. Two months later, at the scheduled sentencing hearing, Long requested to represent himself for purposes of sentencing. The court denied the request as untimely. It sentenced Long to an aggregate term of 20 years as follows: the upper term of 4 years for count 2 as the principal count; a full consecutive upper term of 10

8

years for count 1; consecutive 8-month terms for counts 3 and 4; consecutive 1-year terms for counts 5 and 6; a consecutive 8-month term for count 7; concurrent 2-year terms for counts 8 and 9; consecutive 8-month terms for counts 10 and 11; and a consecutive 8-month term for count 12.

## DISCUSSION

### I

### *Substantial Evidence*

As he did at trial, Long contends there was insufficient evidence to support his conviction for committing a lewd act upon Jane by force in violation of section 288, subdivision (b)(1), because Jane gave inconsistent testimony about whether or not Long grabbed her hand and pushed it down his pants. The jury was not convinced and neither are we.

In evaluating a sufficiency of the evidence claim, " 'we review the whole record to determine whether any rational trier of fact could have found the essential elements of the crime … beyond a reasonable doubt. [Citation.] The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.] "Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to

9

determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.  [Citation.]  We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence.  [Citation.]"  [Citation.]  A reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " the jury's verdict.' "  (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.)

During her initial interview, Jane reported Long grabbed her hand and pushed it down his pants.  She told her parents the same thing.  In a second interview with the social worker, she did not expressly disavow this version of events, but, when asked what he said, she reported Long told her he wanted to push her hand down his pants.  Jane also reported Long told her not to tell anyone about this event because he would get into trouble and he would be mad at her.  At trial, Jane stated the money incident was the most disturbing event and she tried to forget it.  Jane stated she could not remember one way or the other if he touched her, before later telling the defense attorney, he did not grab her hand.  The jury had the opportunity to determine the credibility of each of these statements after viewing not only Jane's trial testimony, but also her videotaped interview with the social worker.  Viewing the evidence most favorably to the judgment, we conclude there is substantial evidence to support the jury's verdict.

II

*Possession of Child Pornography*

The People concede, as a matter of law, possession of multiple images in one location, which were found on one date, constitutes one violation of section 311.11, even

10

though the images are found on different media devices.  (*People v. Mahoney* (2013) 220 Cal.App.4th 781, 796; *People v. Manfredi* (2008) 169 Cal.App.4th 622, 624-625, 634; *People v. Hertzig* (2007) 156 Cal.App.4th 398, 403.)  Accordingly, we reverse Long's convictions for counts 8 and 9 for possession of child pornography.[3]

III

*Denial of Self-Representation Request at Sentencing Hearing*

A

The jury returned their verdicts on May 17, 2013, finding Long guilty on all counts.  The court set the sentencing hearing for eight weeks later, July 12, to allow for preparation of a probation report.

When the sentencing hearing commenced, Long's defense attorney advised the court Long wished to represent himself at the sentencing hearing pursuant to *Faretta v. California* (1975) 422 U.S. 806.)  The prosecutor noted Long had previously represented himself.  However, just before the scheduled trial date, Long asked for reappointment of counsel indicating he was unable to go forward with trial or to handle the gravity of the circumstances facing him or to marshal the evidence to present his defense in court.  The court granted the request to reappoint counsel and continued the trial.  Long stated he previously could not represent himself because the jail did not provide him with law

---

[3]  The People do not advance an argument the facts could have supported independent counts of possession based on evidence Long showed Jane pornographic images at different locations, both at the pool and outside his trailer, and took pornographic images of Jane at locations outside of his trailer, such as the pool and the park.  The People admit this theory was not advanced to the jury and the jury was not instructed in this regard.  Therefore, we do not consider this issue.

library time. He stated he now wanted to represent himself "so I get due process and finish up—do some post trial motions." He requested a continuance of two or three weeks to prepare the motions and obtain letters from family. He also requested the appointment of an investigator to help him file motions and "to do some things."

After taking a break to review the record and the case of *People v. Miller* (2007) 153 Cal.App.4th 1015, 1023 (*Miller*), the court denied the motion. It stated, "you were convicted . . . on the 17th of May. So it's almost two months ago. And this is now the day set for sentencing. And this is simply not timely."

B

Long contends the trial court erred in finding the motion for self-representation untimely and, even if it was untimely, the court abused its discretion in denying the motion. We do not agree.

"A criminal defendant has a constitutional right to counsel at all critical stages of a criminal prosecution, including sentencing. [Citations.] The right to counsel may be waived by a criminal defendant who elects to represent himself at trial. [Citation.] The right of self-representation is absolute, but only if a request to do so is knowingly and voluntarily made and if asserted a reasonable time before trial begins. Otherwise, requests for self-representation are addressed to the trial court's sound discretion." (*People v. Doolin* (2009) 45 Cal.4th 390, 453 (*Doolin*).)

Courts have held requests to waive counsel made on the day of trial, or even several days before trial, are untimely. (*People v. Carlisle* (2001) 86 Cal.App.4th 1382, 1390; *People v. Scott* (2001) 91 Cal.App.4th 1197, 1203.) Denial of such tardy requests

12

is necessary "to avoid unjustifiable delay or disruption of orderly court proceedings." (*People v. Ruiz* (1983) 142 Cal.App.3d 780, 791.) Similar concerns apply to motions made at posttrial proceedings, such as sentencing. The Supreme Court in *Doolin*, *supra*, 45 Cal.4th at page 454 held a defendant's request to represent himself on the day of the sentencing hearing was "manifestly untimely." The *Doolin* court concluded the trial court was well within its scope of discretion to deny the motion because the defendant "was not prepared to proceed and could not provide a reasonable estimate of when he would be ready." (*Id.* at p. 455.)

The case Long relies upon, *Miller*, *supra*, 153 Cal.App.4th 1015, is distinguishable. In *Miller*, the defendant made his request for self-representation after a verdict was rendered and after a motion for new trial, but more than two months before the sentencing hearing was scheduled. He indicated he wanted to do additional investigation, but would be ready on the day set for hearing. The Court of Appeal concluded such a request was timely and the defendant had an absolute right to represent himself. (*Id.* at pp. 1020, 1024; see *Doolin*, *supra*, 45 Cal.4th at p. 455, fn. 39.)

In contrast, here, two months passed between the conviction and the sentencing hearing. Long did not file posttrial motions in the interim or file a motion to represent himself. Instead, he waited until the day of the sentencing hearing to request self-representation and announced he wanted a continuance to file unspecified posttrial motions and to obtain letters from family. The request in this case was untimely.

An untimely request for self-representation "is addressed to the sound discretion of the trial court, which should consider such factors as the quality of counsel's

13

representation of the defendant, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay that might reasonably be expected to follow the granting of such a motion." (*People v. Marshall* (1996) 13 Cal.4th 799, 827, citing *People v. Windham* (1977) 19 Cal.3d 121, 128; see *People v. Ruiz*, *supra*, 142 Cal.App.3d at p. 792.) A reviewing court may uphold an order denying a motion for self-representation even though the trial court did not explicitly address the foregoing factors, if the record supports such a conclusion. (*People v. Marshall*, *supra*, at p. 828; *People v. Perez* (1992) 4 Cal.App.4th 893, 904.)

In this case, although the court did not specifically inquire about the factors set forth above, the record supports the conclusion the trial court did not abuse its discretion in denying the tardy request for self-representation. The court had the opportunity to observe the quality of Long's representation throughout the trial. In addition, there is evidence of a proclivity to seek substitute counsel to delay proceedings. Long had previously been granted a request for self-representation in January 2013. Long represented he would be ready for trial on the date set. However, when the trial date arrived, Long announced he was not ready and made an oral motion for the public defender's office to be reappointed. The court granted the request to reappoint the public defender based on Long's representation he was unable to go forward with trial or to handle his defense. The court then granted a trial continuance over the People's objection. When trial finally commenced in May 2013, Long made a motion to relieve his current attorney, who had represented him since the inception of the case, and to have an alternate public defender appointed to represent him. After conducting a confidential

14

hearing, pursuant to *People v.Marsden* (1970) 2 Cal.3d 118, the court denied the request and trial proceeded.

When Long sought to represent himself on the day of the sentencing hearing, Long indicated he wanted to file posttrial motions and obtain letters from family. He also wanted an investigator appointed to assist him. The court took a break to consider the request during which it reviewed case authority and the record. The court considered the fact Long wished to file a motion to strike a strike pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, but since he had no prior strike convictions, a *Romero* motion would not be applicable. The court also considered the People's opposition to the request indicating the need for closure for the minor victim rather than further delay of the proceedings. Under these circumstances, we cannot conclude the trial court abused its discretion in denying Long's request to represent himself.

IV

*Sentencing Regarding Count 1*

A

In sentencing Long for count 1, the court noted a conviction under section 288, subdivision (b)(1), allowed for imposition of a full consecutive term pursuant to section 667.6, subdivision (c), which it indicated it was choosing. The court also noted it was choosing the upper term of 10 years "with the same factors in aggravation as I've just enumerated for [the upper term for count 2]. They are also present on this occasion."

The court previously cited three independent aggravating factors. First, as to the vulnerability of the victim (Cal. Rules of Court, rule 4.421(a)(3)), the court stated, "[s]he

15

was young. Of course this involves a child. But she's isolated; she's not with peers, friends, family. She's one on one with [Long]." Second, as to planning (Cal. Rules of Court, rule 4.421(a)(8)), the court stated "[t]his whole testimony indicates planning, grooming, the whole trial." And third, as to violation of trust (Cal. Rules of Court, rule 4.421(a)(11)), the court stated "[h]e grooms her; the friendship. This is what the jury found here, and supported by the evidence. Candy, gifts, things of that nature. You develop a friendship, a trust … and then it's violated."

B

A conviction under section 288, subdivision (b), for a lewd or lascivious act permits a trial court to exercise its discretion under section 667.6, subdivision (c), to impose a full, separate, and consecutive term for crimes involving the same victim. In doing so, the court is expected to give its sentencing reasons on the record. (Cal. Rules of Court, rule 4.406, subds. (a) & (b)(5); *People v. Belmontes* (1983) 34 Cal.3d 335, 347-348.) " ' "[T]he trial court must state a reason for imposing a consecutive sentence and a separate reason for imposing a full consecutive sentence as opposed to one-third the middle term as provided in section 1170.1." [Citation.] … [H]owever, the court may "repeat the same reasons." [Citation.]' [Citation.] 'What is required is an identification of the criteria which justify use of the drastically harsher provisions of section 667.6, subdivision (c). The crucial factor, in our view, is that the record reflect recognition on the part of the trial court that it is making a separate and additional choice in sentencing under section 667.6, subdivision (c).' " (*People v. Quintanilla* (2009) 170 Cal.App.4th 406, 411.)

16

In this case, the trial court indicated its intention to impose the harsher provisions available under section 667.6, subdivision (c), but did not specify reasons as required. Instead, it referred to aggravating factors to support the upper term of 10 years. Long contends factors used to impose the upper term cannot also be used to impose the full consecutive term. (Cal. Rules of Court, rule 4.425.) We agree the court erred.

However, we conclude Long has not demonstrated it is reasonably probable he would have obtained a result more favorable to him in the absence of the error. (*People v. Sanchez* (1994) 23 Cal.App.4th 1680, 1686.) " 'Improper dual use of the same fact for imposition of both an upper term and a consecutive term or other enhancement does not necessitate resentencing if "[i]t is not reasonably probable that a more favorable sentence would have been imposed in the absence of the error." ' [Citation.] Only a single aggravating factor is required to impose the upper term [citation], and the same is true of the choice to impose a consecutive sentence [citation]. In this case, the court could have selected disparate facts from among those it recited to justify the imposition of both a consecutive sentence and the upper term, and on this record we discern no reasonable probability that it would not have done so. Resentencing is not required." (*People v. Osband* (1996) 13 Cal.4th 622, 728-729.)

The same analysis applies in this case. Had Long or his attorney timely objected to the failure to state sufficient grounds under section 667.6, the court could have selected disparate facts from among those it cited to justify not only the upper term, but also the consecutive and the full consecutive term. In addition to the three aggravating factors cited by the court, each of which standing alone would be sufficient to justify the court's

17

sentencing choices, the probation report listed additional factors in aggravation and no factors in mitigation. In discussing whether or not to impose concurrent terms for the possession of child pornography counts, the court noted, "I feel less strongly on these counts than I do on the first ones that were touched on." This indicates the court felt strongly about its sentencing choices with regard to counts 1 and 2. As in *Osband*, *supra*, 13 Cal.4th 622 we can discern no reasonable probability the court would not have articulated sufficient aggravating factors to justify the sentence for count 1 had the error been called to its attention. Long has not demonstrated there is a reasonable probability of a better result if we were to remand for resentencing. Given our conclusion, we need not reach the issues of forfeiture or ineffective assistance of counsel.

V

*Correction of the Abstract of Judgment*

Long contends, the People concede, and we agree clerical errors in the abstract of judgment must be corrected as follows: (1) for count 4, the statutory reference to section 288.3, subdivision (a), should be changed to section 288.2, subdivision (a); (2) for count 5, the statutory reference to section 288.2, subdivision (a), should be changed to section 288.3, subdivision (a); and (3) for counts 10 and 11, the statutory reference to section 311.11, subdivision (a), should be changed to section 311.1, subdivision (a). We may order correction of clerical errors in an abstract of judgment at any time. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185; *People v. Mendez* (2010) 188 Cal.App.4th 47, 61.) We, therefore, direct the trial court to amend the abstract of judgment to correct these errors.

18

DISPOSITION

The convictions for counts 8 and 9 are reversed.  The trial court is directed to amend the abstract of judgment as follows:  (1) for count 4, replace the statutory reference to 288.3, subdivision (a), with section 288.2, subdivision (a); (2) for count 5, replace the statutory reference to section 288.2, subdivision (a), with section 288.3, subdivision (a); and (3) for counts 10 and 11, replace the statutory reference to section 311.11, subdivision (a), with section 311.1, subdivision (a).  The court is also directed to forward an amended abstract of judgment to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.


                                                                    McCONNELL, P. J.

WE CONCUR:


NARES, J.


O'ROURKE, J.


19